CONCERNED MINORITY EDUCATORS OF WORCESTER & others[1]
*vs.* SCHOOL COMMITTEE OF WORCESTER & another.[2]

Worcester. February 10, 1984. — June 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Arbitration,* Authority of arbitrator. *Anti-Discrimination Law,* Termination of employment, Arbitration, Seniority. *School and School Committee,* Seniority, Termination of employment.

An arbitrator construing a section of a collective bargaining agreement between a school committee and a teachers' union which provided that the "lay-off of any tenured teacher or administrator will be governed by . . . the intent expressed" in certain affirmative action statements did not exceed his authority in concluding that seniority was the sole criterion in determining the order in which layoffs should be made, except possibly in the case of employees with equal seniority, and that consequently the dismissal of certain teachers who are members of minority groups did not violate the agreement. [187-188]

There was no merit to a claim made by a group of minority teachers on appeal from a judgment confirming an arbitrator's award that a teachers' union and a school committee had acted fraudulently in approving a provision in a collective bargaining agreement which suggested that affirmative action policies would be considered in making layoffs, but which was interpreted by the arbitrator as providing that seniority was the sole criterion in determining the order of layoffs. [188]

On appeal from a judgment confirming an arbitrator's award which interpreted a section of a collective bargaining agreement between a teachers' union and a school committee as providing that, in the event of a reduction in force, teachers were to be discharged solely on the basis of seniority,

---

[1] The Concerned Minority Educators of Worcester is an unincorporated association of black and Hispanic tenured teachers employed by the Worcester School Committee. The other plaintiffs are eleven tenured teachers who are members of the association and are members of the defendant Educational Association of Worcester, Inc.

[2] The other defendant is the Educational Association of Worcester, Inc., the bargaining agent for all teachers employed by the School Committee of Worcester.

without consideration of any disproportionate effect of such layoffs on teachers who are members of minority groups, it was held that the seniority discharge system did not violate G. L. c. 151B, § 4 (1). [188-190]

In the circumstances, the plaintiffs in an action seeking to vacate an arbitrator's award were not prejudiced by the allowance of the defendant union's motion to strike certain paragraphs and exhibits from the plaintiffs' complaint and by the judge's ruling on the motion without examining the record before the arbitrator. [190]

CIVIL ACTIONS commenced in the Superior Court Department on July 8, 1981, and October 7, 1982, respectively.

The cases were heard by *Meagher, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Edward R. Lev (Victor D. DelVecchio, Frank J. Bailey & Peggy A. Wiesenberg* with him) for the plaintiffs.

*Brian A. Riley* for Educational Association of Worcester, Inc.

*James F. Bergin,* Assistant City Solicitor (*Malcolm L. Burdine,* Assistant City Solicitor, with him) for School Committee of Worcester.

*Valerie Epps & Marjorie Heins,* for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

WILKINS, J. The plaintiffs appeal from that portion of a judgment that denied their motion to vacate an arbitrator's award and allowed a motion to confirm the arbitrator's award. They also challenge certain rulings of the judge. At the heart of the plaintiffs' appeal is their objection to the arbitrator's decision that, under the relevant collective bargaining agreement, layoffs of teachers in Worcester should have been conducted on the basis of seniority without any consideration (except perhaps in the case of any tie) of language in the collective bargaining agreement that, the plaintiffs argue, also required consideration of affirmative action goals in determining which teachers should be laid off. There was no prejudicial error.

The significant language in the collective bargaining agreement covering the period January 1, 1980, through December 31, 1981, is stated in Article XI, entitled Reduction in Force.

It provides, as to teachers, in § A 7, under the heading Affirmative Action: "The lay-off of any tenured teacher or administrator will be governed by the Reduction in Force Policy and the intent expressed by the School Committee in the Affirmative Action Plan adopted on January 18, 1979 and the Affirmative Action Policy Statement adopted by the School Committee on June 26, 1978." On April 30, 1981, the school committee, faced with the need to lay off teachers, voted that any reduction in force would use "seniority as the main vehicle for all reductions" with affirmative action to "be considered when all other matters are equal." In June, 1978, the school committee had adopted an Affirmative Action Policy Statement that spoke specifically of recruiting practices but made no reference to layoffs. The question of how reductions in force should be handled was the subject of subsequent discussion. However, when, in January, 1979, the school committee adopted an Affirmative Action Plan designed to increase the percentage of minority faculty to 5% by 1984, it made no reference to minority teachers with regard to layoffs or reductions in force and only mentioned "recruiting, hiring, assigning and promoting qualified persons without regard to race, religion, sex, national origin, handicap or age." In 1981, the school committee laid off 146 teachers of whom 18 were minority teachers. It is uncontested that the layoffs had a disproportionate impact on minority teachers.[3]

The plaintiffs filed a grievance under the collective bargaining agreement, but the defendant union refused to process it. In July, 1981, the plaintiffs filed a civil rights action raising various challenges to the laying-off of the individual plaintiffs and also seeking an order that the defendant union proceed to arbitration with the school committee on the question of the propriety of the layoffs. A judge of the Superior Court granted the request for an order that arbitration proceed and further ordered that the plaintiffs should be permitted to participate in

[3] Evidence before the arbitrator showed that before the layoffs 4.1% of the tenured teachers in Worcester were minority teachers and that after the layoffs 3.3% were minority teachers. Twenty-five percent of the tenured minority teachers and 7.6% of the tenured nonminority teachers were laid off.

the arbitration. Another judge of the Superior Court enjoined any layoffs of the plaintiffs pending the final outcome of the arbitration proceeding. On September 10, 1982, the arbitrator issued his award in which he concluded that the "dismissals of the named grievants . . . were *not* in violation of Article XI of the parties' current collective bargaining agreement" (emphasis in original).

In October, 1982, the plaintiffs commenced this action to vacate the arbitrator's award. The defendant union moved to confirm the award. This proceeding was consolidated with the plaintiffs' earlier civil rights action. After hearing, a third judge of the Superior Court entered judgment confirming the award but staying the lay off of certain plaintiffs. It appears from the record that certain aspects of the civil rights action remain unresolved.

We reject the plaintiffs' claim that the arbitrator exceeded his authority. The arbitrator appropriately identified the issue referred to him, and he undertook to interpret the relevant language in the collective bargaining agreement. His conclusion that seniority alone (at least in the absence of a tie) was the appropriate measure of the order of layoffs, of course, gives no substantial effect to the language in art. XI, § A 7, concerning the January, 1979, Affirmative Action Plan and the June, 1978, Affirmative Action Policy Statement. The plaintiffs make a strong argument that the arbitrator was in error in construing art. XI, § A 7, to provide that seniority was the sole criterion in determining the order in which layoffs should be made (except in the case of a tie).

The role of courts in reviewing an arbitrator's award is limited. G. L. c. 150C, § 11. We do not, and cannot, pass on an arbitrator's alleged errors of law and, absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation. See *School Comm. of W. Springfield* v. *Korbut,* 373 Mass. 788, 792 (1977); *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 115 (1977); *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 386, 390 (1973); *Greene* v. *Mari & Sons Flooring Co.,* 362 Mass. 560, 562-563 (1972). The fact that an arbitrator has

committed an error of law does not alone mean that he has exceeded his authority.

Courts do consider whether an arbitrator's award draws its essence from the collective bargaining agreement. See *Chief Admin. Justice of the Trial Court* v. *Service Employees Int'l Union, Local 254,* 383 Mass. 791, 794 (1981); *Morceau* v. *Gould-Nat'l Batteries, Inc.,* 344 Mass. 120, 124-125 (1962). The arbitrator's opinion shows that he was faithful to his obligations, even if he may have been in error in his interpretation of the collective bargaining agreement. His conclusion is not so implausible as to justify our overturning it.[4] Because of the ambiguous language in the January, 1979, Affirmative Action Plan and the June, 1978, Affirmative Action Policy Statement, which did not focus on the matter of layoffs, the application of seniority principles is not so implausible as to justify this court in concluding that the award had no basis in the collective bargaining agreement. The plaintiffs may well be justified in concluding that their interests were inadequately protected by the collective bargaining agreement and that the arbitrator was wrong in his decision, but we do not see the arbitrator's action as so irrational as to permit our intervention to vacate the award.

The plaintiffs argue that the award should be vacated because it was procured by fraud. G. L. c. 150C, § 11 (*a*) (1). The claim is that the union and the school committee acted fraudulently toward the plaintiffs in approving art. XI, § A 7, because they did not intend § A 7 to require any special consideration of minorities in making layoffs. This claim, which was not explicitly asserted as a ground for the plaintiffs' motion to vacate the award, is not supported by the arbitrator's findings. He concluded that the evidence did not establish that minority teachers were misled into believing that § A 7 included an override of the strict use of seniority.

The plaintiffs, supported by the amicus curiae brief of the Civil Liberties Union of Massachusetts, argue further that the

---

[4] Our function does not include ruling on the appropriateness of the arbitrator's admission of and reliance on particular evidence. Thus we have not considered evidence before the arbitrator in this respect.

law of the Commonwealth requires recognition of the interests of the minority teachers, who were disproportionately affected as a group by the use of seniority as the sole determinant of who would be laid off.[5] Under G. L. c. 150C, § 11 (*a*) (3), an award must be vacated if the arbitrator by his award required a person to engage in conduct prohibited by State law. The issue is whether on this record a requirement that teachers be discharged strictly on the basis of seniority has been shown to violate State law.[6]

The plaintiffs argue that the seniority discharge system involved in this case would violate G. L. c. 151B, § 4 (1), as amended through St. 1965, c. 397, § 4, which makes unlawful discrimination in terms, conditions, or privileges of employment "because of the race, color, religious creed, national origin, sex, age, or ancestry of any individual." The fact that a bona fide strict seniority system is permissible under Federal law does not foreclose a different result under State law. See *Massachusetts Elec. Co.* v. *Massachusetts Commission Against Discrimination,* 375 Mass. 160, 167 (1978); 42 U.S.C. §§ 2000e-7 & 2000h-4 (1976). The Massachusetts statutes, for example, contain no explicit approval of the use of a bona fide seniority system such as appears in 42 U.S.C. § 2000e-2(h) (1976) (§ 703[h] of Title VII of the Civil Rights Act of 1964).

The plaintiffs point out that we have recognized that practices neutral in form but discriminatory in impact are proscribed by G. L. c. 151B, § 4. *School Comm. of Braintree* v. *Massachusetts Commission Against Discrimination,* 377 Mass. 424, 429 (1979). Certainly a voluntary program for determining layoffs containing an affirmative action component

---

[5] The plaintiffs rightly grant that the use of a bona fide strict seniority system for layoffs would not violate Federal law. See *American Tobacco Co.* v. *Patterson,* 456 U.S. 63, 68 (1982); *International Bhd. of Teamsters* v. *United States,* 431 U.S. 324, 348 n.30 (1977).

[6] We understand from the plaintiffs' brief that in their civil rights action they assert that, because a disproportionate number of minority teachers were laid off, the use of strict seniority would violate G. L. c. 151B, § 4, and art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution. In this case, although the plaintiffs refer to art. 1, they make no argument based on art. 1, and we do not consider the point.

overriding a seniority component, in whole or in part, would not violate State law and is not prohibited by Federal law. See *Boston Chapter, NAACP, Inc.* v. *Beecher,* 504 F.2d 1017, 1028 (1st Cir. 1974), cert. denied, 421 U.S. 910 (1975). However, G. L. c. 151B, § 4, as amended through St. 1966, c. 361, provides that nothing in G. L. c. 151B "shall be interpreted as requiring any employer . . . to grant preferential treatment to any individual or to any group because of . . . [racial] imbalance." This language indicates that it is not unlawful under G. L. c. 151B, § 4, to make layoffs pursuant to a bona fide seniority system, even when to do so will work to the disadvantage of a particular group generally protected by G. L. c. 151B, § 4, and that an affirmative action component in the determination of layoffs was not required in the arbitrator's award. We conclude, therefore, that the arbitrator's award does not require the school committee to engage in conduct prohibited by G. L. c. 151B, § 4. See G. L. c. 150C, § 11 (*a*) (3).

The plaintiffs were not prejudiced by the allowance of the defendant union's motion to strike certain paragraphs and exhibits from the plaintiffs' complaint to vacate the arbitrator's award. The judge ruled on the motion to vacate the arbitrator's award without admitting in evidence before him, and then examining, the record before the arbitrator. Although the occasions in which an arbitrator's award will be vacated because of what did or did not appear in the record before him are rare, the record before the arbitrator may be relevant to particular challenges to an award, such as a claim that the record before the arbitrator shows no support whatever for his determination. See *United Elec., Radio & Mach. Workers, Local 1139* v. *Litton Microwave Cooking Prods.,* 704 F.2d 393, 396-397 (8th Cir. 1983); *Storer Broadcasting Co.* v. *American Fed'n of Television & Radio Artists, Cleveland Local,* 600 F.2d 45, 47-48 (6th Cir. 1979), and cases cited. The plaintiffs were not prejudiced by the judge's failure to examine the record before the arbitrator. We have examined it and conclude that that record was not wholly lacking in support for his award.

We affirm the judgment denying the plaintiffs' motion to vacate the arbitrator's award and allowing the motion to confirm that award.

*So ordered.*