398 Mass. 695                                                        695

Old Rochester Regional Teacher's Club v. Old Rochester Regional School District Committee.

OLD ROCHESTER REGIONAL TEACHER'S CLUB & another[1] *vs.*
OLD ROCHESTER REGIONAL SCHOOL DISTRICT COMMITTEE
& another.[2]

Plymouth. September 8, 1986. — December 3, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Findings by judge. *Contract,* Collective bargaining contract. *Arbitration,* Collective bargaining, School committee, Authority of arbitrator. *School and School Committee,* Termination of employment, Collective bargaining, Arbitration.

The judge who ordered a teacher and a school committee to proceed to arbitration found by implication that an agreement to arbitrate existed, and he was not required by Mass. R. Civ. P. 52 (2) to state that finding explicitly. [698]

Where a disciplinary incident which led to the dismissal of a teacher and gave rise to his grievance against a school committee occurred during the term of a collective bargaining contract between a teachers' union and the school committee, the teacher was entitled to arbitration pursuant to the contract, even though its term had expired before the school committee dismissed him. [698-699]

A judge correctly ruled that, under the applicable collective bargaining contract between a teachers' union and a school committee, an aggrieved teacher seeking reinstatement following his dismissal by the school committee was entitled to arbitration. [699-700]

A tenured teacher who, under G. L. c. 71, § 42, requested a hearing before the school committee as to whether he should be dismissed did not thereby waive his right to arbitration pursuant to the applicable collective bargaining contract. [700-701]

Since, under G. L. c. 150E, § 8, public employers may enter collective bargaining contracts which allow grievances concerning dismissals to be resolved through arbitration, a school committee's decision to enter such a contract was not an improper delegation of its duties. [701-702]

An arbitrator's interpretation of provisions of a collective bargaining contract was not subject to review by this court on the school committee's appeal from a judgment confirming the arbitrator's award. [702]

---

[1] H. Stevens Browne.

[2] The superintendent of schools. We shall refer to a single defendant.

CIVIL ACTION commenced in the Superior Court Department on November 10, 1982.

The case was heard by *Guy Volterra,* J. ˙

The Supreme Judicial Court granted a request for direct appellate review.

*Donald J. Fleming* for the defendants.

*Charles M. Healey, III* (*Ann Clarke* with him) for the plaintiffs.

NOLAN, J. A tenured teacher with nineteen years' service commenced this action in November, 1982, following his dismissal by the school committee. G. L. c. 71, § 43A (1984 ed.). The teacher was dismissed by the committee on October 13, 1982, after a hearing. He sought relief in the alternative: either an order compelling arbitration under G. L. c. 150C, § 2 (1984 ed.), or a de novo hearing in review of the committee's action under § 43A. The judge ordered arbitration. An interlocutory appeal (*Old Rochester Regional Teacher's Club v. Old Rochester Regional School Dist.,* 18 Mass. App. Ct. 117 [1984]), in which the committee appealed from the order compelling arbitration and from the denial of its motion for a preliminary injunction against the teacher's pursuit of his claim for arbitration, was dismissed. There is no appeal from this dismissal before us. The arbitrator's award reduced the dismissal to a thirty-day suspension, and the Superior Court confirmed the award. The committee appealed. We granted its application for direct appellate review. We affirm.

The issue stipulated to the arbitrator was: Is the grievance arbitrable? If so, did the committee violate the collective bargaining agreement, specifically arts. 2 and 21.6,[3] when it ter-

[3] Article 2 of the agreement provides: "Except to the extent that there is contained in this Agreement an express and specific provision to the contrary, all of the authority, power, rights, jurisdiction, responsibilities and duties of the Committee under the laws of the Commonwealth or the lawful By-Laws of the District or of any of the Member Towns are retained by and reserved exclusively to the Committee. The Committee has the final responsibility for establishing the educational policies of the School District."

Article 21.6 reads, in part, as follows: "In addition to the provisions of Section 21.5, no teacher will be formally disciplined (including, but not limited to, being suspended without pay or being given a written warning), or reduced in rank or compensation, without just cause."

minated the employment of the grievant teacher? If so, what is the proper remedy?

The arbitrator found the following facts. During one of his junior high school history classes on June 9, 1982, the teacher was showing a video tape recording on slavery. John Gomes (student), no stranger to the school's disciplinary processes, was not paying attention to the tape, as he was talking. Although admonished to be quiet by the teacher, the student continued to talk to another student. While the student's head was resting on his desk, the teacher approached him from the rear. The teacher testified that he "touched" the student on the forehead to guide his head upward. The student "bolted back" in his chair and would have fallen if the teacher had not reflexively "grabbed" him under the armpits. He escorted the student to the corridor and was going to take him to the office of the assistant principal in charge of discipline when he recalled that the assistant principal was not in school that day. He "tongue lashed" the student and returned with him to the classroom.

On the following day, the student went to the principal's office and reported an entirely different version of the incident. He asserted that the teacher "grabbed" his hair and used "foul language." At a later date, the student recanted his earlier story and testified that the teacher "didn't throw me on the ground" and did not hit him, but "[h]e just kind of touched me." The arbitrator acknowledged the teacher's prior record of five other incidents of such conduct dating back to 1971.

The arbitrator ruled that the grievance was arbitrable, that the committee violated art. 21.6 when it discharged the teacher without just cause and he ordered reinstatement of the teacher "with all contractual rights and benefits unimpaired, except to the extent the record shall show a one month suspension without pay for the 30-day period immediately following October 13, 1982." He further ordered that the teacher be made whole for what he would have earned if the suspension had been for thirty days.

The appeal brings the following issues to the court: (1) whether the teacher's termination was arbitrable; (2) whether

the arbitrator exceeded his authority by substituting his judgment for that of the committee on a policy issue.[4]

1. *Arbitrability.* The committee advances a number of arguments in connection with arbitrability. The committee claims that the judge failed to rule properly on arbitrability. The committee argues that the Superior Court judge violated G. L. c. 150C, § 2, by failing to determine whether an arbitration agreement existed. Chapter 150C, § 2, requires a judge in the Superior Court to "proceed summarily" in determining whether an agreement exists. The judge can order arbitration only if he finds that the parties have entered into such an agreement. In the present case, the Superior Court judge ordered arbitration. Although the judge made no findings of fact, the order to proceed to arbitration indicates that the judge must have ruled that an agreement to arbitrate did exist. The committee argues that the judge's failure to make findings of fact with regard to the existence of an arbitration agreement violates Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). Rule 52 (a), however, provides that the judge need not state findings of fact when deciding the type of preliminary motions brought in this case. See *DiLuzio* v. *United Elec. Workers Local 274,* 391 Mass. 211, 217-218 (1984).

It had no duty to arbitrate, it argues, because the agreement that created the duty to arbitrate expired before the teacher was terminated. The incident from which the teacher's dismissal arose took place on June 9, 1982. On June 30, 1982, the teacher was given notice, as required by G. L. c. 71, § 42 (1984 ed.), that the committee intended to vote his dismissal at a meeting on October 12, 1982. On August 31, 1982, the collective bargaining agreement between the teachers' union and the committee expired. A new contract was not executed until January, 1983, and that contract was not retroactive. Because the collective bargaining agreement which allowed the teacher to seek arbitration had expired, the committee argues

---

[4] We do not consider the issue of whether the judge erred in not dismissing the complaint as against the superintendent because the committee's argument does not comply with Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958).

398 Mass. 695                                         699

Old Rochester Regional Teacher's Club *v.* Old Rochester Regional School District Committee.

that the Superior Court judge erred in ordering the committee to arbitrate. We do not agree. In *Nolde Bros.* v. *Local 358, Bakery & Confectionery Workers' Union,* 430 U.S. 243, 249 (1977), the United States Supreme Court held that an employer could be forced to arbitrate after a collective bargaining agreement had expired, as long as the dispute submitted to arbitration arose under the agreement. Although the *Nolde Bros.* opinion interprets Federal law and is not binding on this court (see *Loyal Protective Life Ins. Co.* v. *Massachusetts Indem. & Life Ins. Co.,* 362 Mass. 484, 491 [1972]), we think that the reasoning announced in *Nolde Bros., supra,* is sound. *Boston Lodge 264, Int'l Ass'n of Machinists* v. *Mass. Bay Transp. Auth.,* 389 Mass. 819, 821 (1983). Thus, under the *Nolde Bros.* case, the committee is required to arbitrate any dispute which arose under the collective bargaining agreement.

The committee argues that no dispute arose until the teacher was dismissed in October, after the expiration of the agreement. The grievance, however, arose during the previous school year when the incident between the teacher and the student took place. The incident was the origin of the grievance. Without it, there would have been no grievance. Before expiration of the agreement, the committee notified the teacher that there were twelve separate charges advanced as the basis for dismissal (after the hearing, he was dismissed for only three of the twelve charges). To the point is the case of *United Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U.S. 591 (1960), in which the United States Supreme Court approved an arbitrator's award reducing the company's discharge of employees to a ten-day suspension despite the fact that the collective bargaining agreement expired after the discharge but before the award. Since the incident for which the teacher was disciplined took place while the contract was in effect, the dispute over the termination arose under the agreement and the teacher was entitled to arbitration pursuant to the terms of the agreement. *Nolde Bros., supra* at 251.

The committee argues that even if the agreement is found to be applicable, the agreement's language still created no obligation to arbitrate. The arbitrator, however, ruled that

arts. 6.1 and 6.13 of the agreement created a duty to arbitrate and the judge in the Superior Court agreed. To determine whether he was correct, we examine the agreement. Article 6.1 provides, in part: "The purpose of the procedure . . . is to produce prompt and equitable solutions to grievances." Article 6.13 reads, in part, as follows: "A grievance may continue to be processed by an aggrieved teacher no longer in the employ of the Committee only if such teacher would receive a monetary award in the event that the grievance is upheld *or, in the case of a grievance contesting the termination of a teacher, if such teacher is seeking the remedy of reinstatement to the employ of the Committee*" (emphasis supplied). In this case, the teacher was dismissed and is seeking reinstatement and, therefore, he comes within art. 6.13.

We are aware that the United States Supreme Court's recent decision in *AT&T Technologies, Inc.* v. *Communications Workers of Am.*, 475 U.S. 643, 649 (1986), raised by the committee at oral argument, holds that, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." The rule of *A T & T Technologies, Inc.* was complied with in this case. This rule is not inconsistent with law in the Commonwealth. See *School Comm. of Southbridge* v. *Brown,* 375 Mass. 502, 504 (1978). The judge did not order arbitration until he conducted a hearing on the arbitrability of the dispute. We conclude that the judge properly ruled on arbitrability, that the teacher's right to arbitration was created by the agreement, and we reject the committee's contention that the teacher's only rights were those created under G. L. c. 71, § 42.[5]

The committee also claims that the teacher waived any right he may have had to arbitration by requesting a hearing under G. L. c. 71, § 42. The committee cites no authority for this argument. A teacher is not barred from seeking arbitration

---

[5] Because we find that the judge's order directing the parties to arbitration was based on a valid agreement to arbitrate, we need not reach the committee's argument that only the Labor Relations Commission is authorized by G. L. c. 150E, § 8 (1984 ed.), to order arbitration if no agreement exits.

simply because he requested a hearing as to whether he should be dismissed. In *Fogarty* v. *School Comm. of Palmer,* 15 Mass. App. Ct. 1008 (1983), the Appeals Court agreed that it would be "anomalous and unfair" to bar a teacher from bringing a statutory action under G. L. c. 71 after her grievance was found to be nonarbitrable. The logic of *Fogarty* is supportive of the present case. Our holding does not, however, allow a teacher facing dismissal opportunities to challenge the committee's ultimate decision. A teacher still must choose between the statutory remedy provided in G. L. c. 71 and the right to arbitration provided under a collective bargaining agreement or under G. L. c. 150E, § 8, but the teacher need not make this choice until the committee has conducted a hearing to determine whether it will dismiss the teacher.

2. *The arbitrator's scope of review.* Traditionally, arbitrators have great latitude in taking testimony, in conducting hearings, and in fashioning remedies. See Holden, Grievance Arbitration, Portrait of a Process — Collective Negotiations in Public Employment 374, 377, 382-383 (Labor Relations Press 1979). By implication, the Legislature vested the arbitrator with these powers when it provided for final and binding arbitration in G. L. c. 150E, § 8, where the parties include in their agreement a grievance procedure. In Massachusetts, an arbitrator's decision is beyond the scope of judicial review even if the decision misinterprets the collective bargaining agreement or contains errors of law. *School Comm. of Waltham* v. *Waltham Educators Ass'n, post* 703, 705 (1986). *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984). Judicial review of an arbitrator's decision is limited also by statute. G. L. c. 150C, § 11 (1984 ed.). Section 11 (*a*) (3) allows the Superior Court to vacate an award if "the arbitrators exceeded their powers."

We need not decide whether dismissal of a teacher is within the prohibited province of educational policy because the Legislature in G. L. c. 150E, § 8, has authorized public employees, including teachers, to enter collective bargaining agreements which allow grievances concerning dismissals to be resolved through arbitration. See *School Comm. of Needham* v. *Needham Educ. Ass'n, post* 709, 713-714 (1986).

We note that G. L. c. 71, § 41, which authorizes a school committee to grant tenure, is not included in the list of statutes over which c. 150E, § 8, governs in the event of a dispute. If the Legislature intended to omit dismissal grievances from arbitration, as it did tenure decisions, it could have specifically omitted G. L. c, 71, §§ 42-43A, from § 8, just as it omitted G. L. c. 71, § 41. However, since the Legislature authorized arbitration for dismissal grievances, the committee was free to negotiate an arbitration provision and its decision to do so was not an improper delegation.

Finally, the committee argues that the arbitrator exceeded his authority by using the principles of "just cause" and "progressive discipline" in reaching his decision reinstating the teacher. As we stated above, however, the decision to arbitrate dismissal grievances was a decision for the committee to make. The agreement contained a "just cause" provision as well as a provision allowing the arbitrator to apply the "normally accepted principles of arbitration law." Interpretation of these provisions is for the arbitrator, and "we have no business overruling an arbitrator because we give a contract a different interpretation." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984). We see no reason to hold that the arbitrator exceeded his authority because we have held today (see *School Comm. of Waltham* v. *Waltham Educators Ass'n, supra* at 707-708) that the scope of an arbitrator's review is de novo and broader than judicial review under § 43A.

*Judgment affirmed.*