NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13819

J.C. CANNISTRARO, LLC  vs.  COLUMBIA CONSTRUCTION CO. & another.[1]


Norfolk.     February 2, 2026. – June 26, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Arbitration, Authority of arbitrator, Confirmation of award.
    Massachusetts Arbitration Act.  Public Policy.  Contract,
    Construction contract, Subcontract.  Payment.



    Civil action commenced in the Superior Court Department on
August 3, 2020.

    Motions to vacate and to confirm an arbitration award were
heard by Keren E. Goldenberg, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Jeff D. Bernarducci (Seth M. Pasakarnis & Lindsey K.P.
Black also present) for Columbia Construction Co.
    J. Nathan Cole (Ross C. Wecker also present) for the
plaintiff.
    The following submitted briefs for amici curiae:
    Robert W. Stetson for Real Estate Bar Association for
Massachusetts, Inc., & another.

---

    [1] Travelers Casualty & Surety Company of America.

David E. Wilson for Associated Subcontractors of Massachusetts, Inc.

Kenneth E. Rubinstein, Nicholas A. Dube, & Michael J. Amato for Associated General Contractors of Massachusetts & others.

Joseph A. Barra for Electrical Contractors Association of Greater Boston, Inc., & others.

WOLOHOJIAN, J.  The question is whether an arbitrator exceeded his authority by awarding recoupment of payments to a general contractor, Columbia Construction Co. (Columbia), that (a) did not timely certify its rejection of invoices submitted by a subcontractor, J.C. Cannistraro, LLC (Cannistraro), and (b) asserted defenses to payment before paying the invoices.  See Business Interiors Floor Covering Business Trust v. Graycor Constr. Co., 494 Mass. 216, 225 (2024) (Graycor) (establishing payment prerequisite where contractor does not reject invoices in conformity with requirements of prompt pay act, G. L. c. 149, § 29E).  We conclude that the arbitrator's award was within his authority, and accordingly reverse the judgment of a Superior Court judge vacating the arbitration award.[2]

---

[2] We acknowledge the amicus briefs submitted by Real Estate Bar Association for Massachusetts, Inc., and the Abstract Club; Electrical Contractors Association of Greater Boston, Inc., Boston Roofing Contractors Association, Inc., Painting & Finishing Employers Association of New England, Inc., and Glass Employers Association of New England, Inc.; Associated Subcontractors of Massachusetts, Inc.; and Associated General Contractors of Massachusetts, Construction Industries of Massachusetts, Inc., and Utility Contractors' Association of New England, Inc.

Background.[3]  On February 3, 2017, Columbia entered into a contract for the construction and renovation of an office and manufacturing facility located in Walpole (prime contract).  The prime contract was a "contract for construction" as defined in G. L. c. 149, § 29E (a), and was therefore subject to the provisions of the prompt pay act.

Columbia then entered into two subcontracts with Cannistraro, both of which contained the following arbitration provision:

> "At the sole election of [Columbia], any disputes shall be resolved by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."

Cannistraro thereafter proceeded to perform work under both subcontracts and submitted regular monthly requisitions for payment.

In addition, in January 2020, Cannistraro submitted change order requests under each subcontract.  Columbia timely rejected those requests and conveyed its reasons for doing so.  Approximately two months later, Cannistraro submitted applications and certificates for payment for the change orders

---

[3] We draw the facts, which are undisputed, from the arbitrator's findings.  The arbitrator's findings were contained in his interim order on the parties' cross motions for summary judgment, his ruling on Columbia's motion for leave to amend its response to the arbitration demand, his ruling on Cannistraro's second motion for summary judgment, and his final award.

(collectively, invoices).  Although Columbia timely rejected the invoices, it failed to include the certification required by the prompt pay act that its rejections were made in good faith.[4]  See G. L. c. 149, § 29E (d).[5]  Columbia did not pay the amounts invoiced.

Procedural history.  Cannistraro filed suit in the Superior Court seeking damages in the amount of the invoices.  Among other things, Cannistraro's amended complaint asserted a claim for violation of the prompt pay act, alleging that Columbia failed to make payments in accordance with the requirements of the statute.[6]

---

[4] Several months later, on September 22, 2020, Columbia provided certification that its rejections of the invoices were made in good faith.  But those certifications were not made within the time allowed by the prompt pay act.  See G. L. c. 149, § 29E (d).

[5] The prompt pay act has two provisions concerning certification of good faith rejection:  one for progress payments, see G. L. c. 149, § 29E (c), and one for change orders, see G. L. c. 149, § 29E (d).  Because this case concerns invoices for change orders, it falls under the latter, but both provisions contain the same requirement that a rejection of a request for payment "shall be made in writing," "shall include an explanation of the factual and contractual basis for the rejection and shall be certified as made in good faith."  G. L. c. 149, §§ 29E (c), (d).

[6] The amended complaint also asserted claims for breach of contract, unjust enrichment, promissory estoppel, enforcement of mechanic's lien bonds under G. L. c. 254, § 14, and violation of G. L. c. 93A, § 11.

Columbia answered, denied liability, and asserted various affirmative defenses.[7] In addition, Columbia moved to compel arbitration. That motion was allowed, and the case thereafter proceeded to arbitration under the American Arbitration Association's Construction Industry Arbitration Rules (AAA Construction Rules), as required by the subcontracts.[8]

Once in arbitration, and after discovery, the parties cross-moved for summary judgment. Those cross motions raised, among other things, the question of what, if any, legal consequences were to flow from the fact that Columbia had not timely certified that its rejections of the invoices were made in good faith. The arbitrator, knowing that this legal issue was then pending before the Appeals Court in Tocci Bldg. Corp. v. IRIV Partners, LLC, 101 Mass. App. Ct. 133 (2022) (Tocci), deferred ruling on the cross motions until the Appeals Court issued its decision in that case.

The Appeals Court in Tocci concluded that the good faith certification requirement was "an essential component of the

---

[7] Columbia's affirmative defenses included that Cannistraro had committed a breach of the terms of the subcontract, that it had willfully and knowingly inflated the amount of its mechanic's lien, and that its claims were barred by fraud.

[8] The parties have provided in the appellate record the AAA Construction Rules published in 2015, which we accordingly take to be the version of the rules under which the arbitration proceeded.

scheme set up by the" prompt pay act and that the failure to certify timely in good faith the rejection of an invoice results in deemed approval of the invoice. Tocci, 101 Mass. App. Ct. at 139. The Appeals Court further held that a party may not withhold payment without issuing a timely rejection that complies with statutory requirements, including the good faith certification requirement. Id. at 142. Based on Tocci, the arbitrator ruled that Columbia had violated the prompt pay act by failing to provide timely the required certification of good faith and, therefore, that the invoices were deemed approved. See G. L. c. 149, § 29E (d) ("[a] request which is neither approved nor rejected within such time period shall be deemed to be approved"). The arbitrator accordingly ordered Columbia to pay the unpaid amount of Cannistraro's invoices, namely, $951,855.05.[9]

Columbia complied with the arbitrator's order. It then moved to assert a counterclaim for recoupment under rule 6(b) of the AAA Construction Rules, which allows counterclaims to be asserted with leave of the arbitrator.[10] Over Cannistraro's

---

[9] The arbitrator left to another day the calculation of interest.

[10] Rule 6(b) provides: "Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of [fourteen] calendar

objection, the arbitrator allowed the motion, and Columbia then filed an amended answer that included a counterclaim for recoupment.

In response, Cannistraro filed another motion for summary judgment, in essence arguing that the recoupment counterclaim was foreclosed by Tocci. The arbitrator disagreed. The arbitrator concluded that Tocci did not foreclose Columbia's recoupment claim, explaining that Cannistraro had received timely notice of the grounds for Columbia's rejection of the invoices even though it had not received timely certifications of good faith.

The arbitrator then conducted a three-day evidentiary proceeding on the recoupment counterclaim, found that Columbia met its burden to prove that Cannistraro's invoices were not fair and reasonable, and ruled that Columbia was entitled to recover $576,855.05 plus interest. A final award issued to this effect on April 3, 2024.

Cannistraro next filed in the Superior Court a motion to vacate the final award, pursuant to G. L. c. 251, § 12 (a) (3), on the ground that the arbitrator had exceeded his authority.

_____

days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed no new or different claim or counterclaim may be submitted without the arbitrator's consent."

Shortly thereafter, this court issued its decision in Graycor. Graycor, like this case, involved a dispute between a contractor and a subcontractor over amounts allegedly due for work performed under a contract subject to the prompt pay act. Graycor, 494 Mass. at 217-218. Unlike this case, however, the contractor withheld payment even though it did not dispute the amounts invoiced, nor did it provide written notice rejecting the subcontractor's applications for payment. Id. at 219. When the subcontractor then sued, the contractor sought to raise a common-law defense of impossibility. Id. at 219-220. Noting that the prompt pay act does not address common-law defenses, id. at 225, we concluded that

> "a party does not waive its defenses by failing to approve or reject an invoice within the strict time requirements established by the act. However, a party that neither approves nor rejects a payment application within the requisite time must first make the payment in order to pursue any defenses in a subsequent proceeding related to the invoices, as the invoices have been deemed 'approved.' The invoice payments must be made prior to, or contemporaneous with, the raising of the defenses, or the defenses cannot be raised."

Id. at 217-218. Accordingly, where the general contractor never had paid the disputed invoices, it was precluded from invoking common-law defenses to the subcontractor's breach of contract claim for failure to pay. Id. at 225.

Pointing to Graycor, the Superior Court judge concluded that the arbitrator's award exceeded his authority because

Columbia had asserted defenses to payment in its original answer, which was filed before Columbia paid Cannistraro's invoices. The judge accordingly vacated the recoupment damages component of the arbitration award.[11] This appeal followed, which is now before us on direct appellate review.

Discussion. The question before us is whether, assuming that the sequence of events here was inconsistent with the payment prerequisite established in Graycor,[12] the judge erred in vacating the arbitration award on the ground that it exceeded the arbitrator's authority. We review a trial judge's decision to uphold or vacate an arbitration award de novo. Pittsfield v. Local 447 Int'l Bhd. of Police Officers, 480 Mass. 634, 637 (2018).

The parties' agreement to arbitrate is governed by the Massachusetts Arbitration Act, G. L. c. 251, §§ 1 et seq.,

---

[11] The judge determined that Columbia had asserted the defense in its answer filed in the Superior Court before the case was transferred to arbitration.

[12] Columbia disputes that it did not satisfy Graycor's payment prerequisite, noting that it did not assert its recoupment counterclaim until after it had paid the invoices. Cannistraro is of the opposite view and points out that, although Columbia did not assert any counterclaims before obtaining leave from the arbitrator, it had asserted affirmative defenses to payment as early as its initial answer to the complaint, which was filed before Columbia paid the invoices. Deciding this case as we do, we need not resolve this issue. We accordingly assume, without deciding, that the sequence of events here ran afoul of Graycor's payment prerequisite.

which, in §§ 11 through 13, sets out "[t]he role of courts with respect to confirming, vacating, and modifying an arbitration award." Katz, Nannis & Solomon, P.C. v. Levine, 473 Mass. 784, 789 (2016). "Consistent with policy strongly favoring arbitration, an arbitration award is subject to a narrow scope of review" (citation omitted). Superadio Ltd. Partnership v. Winstar Radio Prods., LLC, 446 Mass. 330, 333 (2006) (Superadio). More specifically, "[u]pon application of a party, the court shall confirm" (emphasis added), G. L. c. 251, § 11, an arbitration award unless one of the limited grounds identified in §§ 12 and 13 applies, see Kauders v. Uber Techs., Inc., 486 Mass. 557, 569-570 (2021), quoting Katz, Nannis & Solomon, P.C., 473 Mass. at 789 (use of "shall confirm" in § 11 is mandatory and "carries no hint of flexibility"). Otherwise, a court is "strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing." Lynn v. Thompson, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). To allow otherwise "would undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties." Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (Plymouth-Carver). "The policy of limited judicial review preserves arbitration as an expeditious and reliable alternative

to litigation for commercial disputes." Katz, Nannis,
& Solomon, P.C., 473 Mass. at 794-795.

As relevant here, one of the limited grounds upon which an
arbitration award may be vacated is where an arbitrator exceeds
his authority.  G. L. c. 251, § 12 (a) (3).  "An arbitrator
exceeds his authority by granting relief beyond the scope of the
arbitration agreement, by awarding relief beyond that to which
the parties bound themselves, or by awarding relief prohibited
by law" (citations omitted).  Plymouth-Carver, 407 Mass. at
1007.  See Katz, Nannis & Solomon, P.C., 473 Mass. at 795;
Superadio, 446 Mass. at 334.  The first two situations are not
at issue in this case because the recoupment award was within
the broad remedial scope of relief allowed under the AAA
Construction Rules to which the parties agreed to be bound.[13]
Where, as here, "the parties have incorporated the AAA rules
into their arbitration agreement, [those rules] exclusively
govern[] the scope of authority for [the arbitrator's] award[]."
Beacon Towers Condominium Trust v. Alex, 473 Mass. 472, 478

---

[13] Rule 48 of the 2015 AAA Construction Rules provided, in
relevant part:

"The arbitrator may grant any remedy or relief that the
arbitrator deems just and equitable and within the scope of
the agreement of the parties, including, but not limited
to, equitable relief and specific performance of a
contract."

(2016) (involving arbitrator's award of attorney's fees). See Superadio, 446 Mass. at 337 (arbitration panel's authority derived from parties' agreement and from broad remedial provision of AAA rules).

Thus, we deal here only with whether the arbitrator exceeded his authority by awarding relief prohibited by law. Awarding relief prohibited by law is not the same thing as awarding relief that constitutes, or results from, an error of law. And, in reviewing an arbitration award, it is essential not to conflate or confuse these two distinct concepts because, while a judge may vacate an arbitration award that is prohibited by law, a judge may not, absent fraud, vacate an award that is an error of law. See Katz, Nannis & Solomon, P.C., 473 Mass. at 795 ("If [an] arbitrator[] in assessing damages commit[s] an error of law or fact, but do[es] not overstep the limits of the issues submitted to [him], a court may not substitute its judgment on the matter" [citation omitted]); Thompson, 435 Mass. at 61. "The fact that an arbitrator has committed an error of law does not alone mean that he has exceeded his authority." Concerned Minority Educators of Worcester v. School Comm. of Worcester, 392 Mass. 184, 187-188 (1984). See Boston v. Boston Police Patrolmen's Ass'n, 443 Mass. 813, 818 (2005) (Patrolmen's Ass'n) (consistent with strong policy favoring arbitration, arbitrator's award is to be upheld "even where it is wrong on

the facts or the law, and whether it is wise or foolish, clear or ambiguous").

An arbitrator awards relief prohibited by law where the relief "offends public policy or . . . directs or requires a result contrary to express statutory provision." Plymouth-Carver, 407 Mass. at 1007. Neither situation is presented here. Turning to the latter first, we begin by noting that the prompt pay act does not by its express terms state if or when a recoupment counterclaim may be raised after an invoice is deemed to be approved due to a failure to provide a timely certification of good faith. See G. L. c. 149, § 29E. Indeed, we held in Graycor that the statute "does not expressly preempt all common-law defenses to breach of contract," and such "defenses are not precluded by the [statute], even if a contractor fails to approve or reject an application for payment as required." Graycor, 494 Mass. at 225-226. As a result, the arbitration award did not direct or require a result contrary to an express provision of the prompt pay act.[14] Contrast

---

[14] Given the absence of an express statutory provision upon which to rely, Cannistraro turns to language in Graycor in which this court concluded that the Legislature's determination "that the failure to accept or reject a periodic payment application within the defined time requirements is deemed an approval of the payment . . . must have meaningful consequences." Graycor, 494 Mass. at 227. This was a "necessary implication" of the statute as a whole. Id. at 226. In that case, the contractor, who had sought to litigate common-law defenses without ever paying the invoices, was precluded from doing so. See id. at

Commonwealth v. Massachusetts Org. of State Eng'rs & Scientists, 423 Mass. 667, 671 (1996) (arbitration award contravened express provisions of G. L. c. 32, § 28K); Massachusetts Bay Transp. Auth. v. Local 589, Amalgamated Transit Union, 406 Mass. 36, 39 (1989) (arbitration award required conduct by public employer to which agency could not bind itself under express terms of G. L. c. 161A, § 19); Marlborough v. Cybulski, Ohnemus & Assocs., 370 Mass. 157, 161 (1976) (arbitration award of damages in excess of amount allowed by G. L. c. 44, § 31); Massachusetts Bd. of Higher Educ./Holyoke Community College v. Massachusetts Teachers Ass'n/Mass. Community College Council/Nat'l Educ. Ass'n, 79 Mass. App. Ct. 27, 32 (2011) (arbitration award intruding on decision-making authority "left by statute to the exclusive managerial control of designated public officials").

What remains is whether the arbitration award offends public policy. See Lawrence v. Falzarano, 380 Mass. 18, 29 (1980) (arbitration award may be vacated if relief is "contrary to legislative or other public policy"). "[B]ecause the public policy [exception] allows courts to by-pass the normal heavy deference accorded to arbitration awards and potentially to 'judicialize' the arbitration process, the judiciary must be

---

228. Regardless, the cited language in Graycor did not identify any "express statutory provision" prohibiting the relief awarded by the arbitrator here. Plymouth-Carver, 407 Mass. at 1007.

cautious about overruling an arbitration award on the ground that it conflicts with public policy" (quotation and citation omitted). Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 604 (2000). Consequently, cases granting relief on such grounds are exceptional; indeed, the public policy exception has arisen almost exclusively in the context of public employees who have engaged in malfeasance. See Patrolmen's Ass'n, 443 Mass. at 823 (vacating arbitration award reinstating police officer who committed perjury and filed false police reports); School Dist. of Beverly v. Geller, 435 Mass. 223, 224, 237 (2001) (Ireland, J., concurring) (vacating arbitration order reinstating school teacher who used physical force against student); Boston v. Boston Police Patrolmen's Ass'n, 74 Mass. App. Ct. 379, 382 (2009) (vacating reinstatement of police officer who committed assault by means of dangerous weapon). As the person seeking to vacate the arbitration award, Cannistraro bears the burden to establish that public policy was violated. Local 447 Int'l Bhd. of Police Officers, 480 Mass. at 640.

Cannistraro has not met its burden here. The particulars of this case make clear that the arbitrator's award does not rise to the level of a violation requiring judicial relief. The public policy that Cannistraro relies on is essentially the statutory requirement of a timely rejection of an invoice that

includes a good faith certification.  Here, the first requirement of a timely rejection was met, while the good faith certification was not made timely.  But, as explained above, the statute does not address the consequences of the failure to comply fully with these requirements, except to state that the invoices are deemed approved.  The statute also does not address whether recoupment claims can nonetheless be pursued.  The arbitrator allowed such claims to proceed, but only after Columbia first paid the disputed invoices in full -- a procedure permitted under the AAA Construction Rules to which the parties agreed to be bound.  See note 13, supra.  In so doing, the arbitrator presciently anticipated Graycor's central requirement that, when a contractor fails to satisfy all statutory requirements for rejecting a claim, it must pay the disputed amount before asserting defenses.  Moreover, although Columbia failed to timely provide good faith certifications, it timely notified Cannistraro of the reasons why it was rejecting the invoices.  The arbitrator appears to have concluded that these reasons were offered in good faith, and that Cannistraro was not harmed by the lack of timely certification because the certifications would have provided no more information about why the invoices were being rejected than Cannistraro had already received.  Such an interpretation, determining that the essential purpose of the prompt pay act was satisfied, even

assuming it was incorrect as a matter of law, does not constitute a violation of public policy.  Accordingly, we conclude that Cannistraro has failed to show that the recoupment award violates public policy.

Conclusion.  The arbitrator did not exceed his authority in awarding recoupment of payments to Columbia, and thus the judge should not have vacated the arbitration award.  The judgment is reversed, and the matter is remanded to the Superior Court for entry of a judgment confirming the arbitration award.

So ordered.