TOCCI BUILDING CORPORATION vs. IRIV PARTNERS, LLC, 101 Mass. App. Ct. 133

 
 TOCCI BUILDING CORPORATION vs. IRIV PARTNERS, LLC, & another [Note 1] (and a companion case [Note 2]).

101 Mass. App. Ct. 133
 February 1, 2022 - June 7, 2022

Court Below: Superior Court, Suffolk County
Present: Rubin, Kinder, & Ditkoff, JJ.

 

Amended July 1, 2022.

Nos. 21-P-393 & 21-P-733.

Contract, Construction contract, Performance and breach. Practice, Civil, Summary judgment, Notice of appeal.

A Superior Court judge properly granted summary judgment for the plaintiff construction contractor and against the defendants, a manager and property owner, on the plaintiff's claims that periodic progress payments on each of seven applications it submitted had been in whole or in part withheld wrongfully under a contract subject to the Prompt Payment Act, G. L. c. 149, § 29E (act), where, given the defendants' failure to issue a rejection effective under the act containing a certification that the rejection was made in good faith prior to the date payment was due (i.e., thirty days after submission of the application), the applications were thereby deemed approved by operation of law and were required to be paid [137-142]; further, the judge properly ordered the entry of separate and final judgment, where the point of the act was that such payments may not be withheld, even on valid grounds that they were not due because of a breach of contract, unless a timely rejection was made in compliance with the statute [142-143].

Civil action commenced in the Superior Court Department on February 6, 2019.

 A motion for summary judgment was heard by Michael D. Ricciuti, J., and the entry of separate and final judgment was ordered by him.

 A motion for enlargement of time to file a notice of appeal was considered in the Appeals Court by Sullivan, J., and a motion for reconsideration was considered by her.

 Roger L. Smerage & Bradley L. Croft (Kirk J. McCormick also present) for the plaintiff.

 Michael B. Donahue (Adam M. Santeusanio also present) for the defendants.

 Page 134 

 Joel Lewin, Christopher W. Morog, Seth M. Pasakarnis, & Alexandra Gordon, for Construction Industries of Massachusetts, Inc., & another, amici curiae, submitted a brief.

 Joseph A. Barra, for Associated Subcontractors of Massachusetts, Inc., amicus curiae, submitted a brief.

 RUBIN, J. This case requires us to construe for the first time the provisions of the Prompt Payment Act, G. L. c. 149, § 29E (the act or statute). That statute applies to certain private contracts for construction with respect to projects for the erection, alteration, repair, or removal of buildings or structures, or for other improvement to real property, where the "contract with the project owner has an original contract price of $3,000,000 or more." [Note 3] G. L. c. 149, § 29E (a). 

 Designed to ensure the prompt payment of, or resolution of disputes about, invoices for periodic payment made by contractors during the course of work on such projects, the act provides, "Every contract for construction shall provide reasonable time periods within which: (i) a person seeking payment under the contract shall submit written applications for periodic progress payments; (ii) the person receiving the application shall approve or reject the application, whether in whole or in part; and (iii) the person approving the application shall pay the amount approved. The time periods for each application for a periodic progress payment shall not exceed: (i) for submission, [thirty] days . . .; (ii) for approval or rejection, [fifteen] days after submission . . .; and (iii) for payment, [forty-five] days after approval." G. L. c. 149, § 29E (c).

 If, in response to a proper application for periodic progress payment, the owner does not provide approval or rejection, in whole or in part, within fifteen days (or a shorter period of time if the contract so provides), the statute provides that the application will "be deemed to be approved unless it is rejected before the date payment is due." G. L. c. 149, § 29E (c). The statute specifies that "[a] rejection of an application for a periodic progress payment, whether in whole or in part, shall be made in writing and shall include an explanation of the factual and contractual basis for the rejection and shall be certified as made in good faith." Id. It also provides that any "provision in a contract 

 Page 135 

for construction which purports to waive or limit any provisions of this section shall be void and unenforceable."

 As the amicus brief of the Associated Subcontractors of Massachusetts, Inc., explains, "By securing prompt payment from upstream funding sources, [the act] ensures that those who perform the work and pay all costs for labor and materials will be promptly compensated without the need to engage in costly legal battles on every project."

 Of course, submission of a proper periodic request for payment does not require its approval. But the statute provides that "[a] rejection of an application for a periodic progress payment shall be subject to the applicable dispute resolution procedure [in the contract]. A provision in the contract which requires a party to delay commencement of the procedure until a date later than [sixty] days after the rejection shall be void and unenforceable." G. L. c. 149, § 29E (c).

 Background. This case involves seven applications for periodic progress payments submitted by the plaintiff Tocci Building Corporation (Tocci), to the defendant IRIV Partners, LLC (IRIV), under a contract subject to the act, that were, in whole or in part, not paid on the date payment would have been due under the contract had they been approved, and which remained unpaid after completion of the project. The contract was between "[IRIV] Partners, LLC Manager for Boston Harbor Industrial Development, LLC," denominated the "Owner" in the contract, and "Tocci Building Corporation," denominated "Constructor," for work to be done at a project at 645 Summer Street in the South Boston section of Boston. The first page of the contract states that the "Property Owner" is "Boston Harbor Industrial Development, LLC." The signature page of the contract contains one line for "Manager: [IRIV] Partners, LLC," on which the signature of P. Andrew Pappas appears, followed by a line indicating that his title is "Manager," and one line for "Constructor: Tocci Building Corporation," on which the signature of Anthony Sandonato appears, followed by a line indicating that his title is "Executive Vice President."

 Following the completion of the project, the plaintiff, Tocci, sued the defendants, IRIV and Boston Harbor Industrial Development, LLC (BHID), for breach of contract, alleging that they had wrongfully withheld the periodic payments, as well as breach of the implied covenant of good faith and fair dealing, fraud, "unjust enrichment/quantum meruit," violation of G. L. c. 93A, and foreclosure of a mechanic's lien pursuant to G. L. c. 254. 

 Page 136 

 The defendants filed counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraud, negligence, unfair and deceptive conduct under G. L. c. 93A, breach of contract as a third-party beneficiary (BHID against Tocci), and breach of express warranty. The defendants alleged that Tocci performed defective work, failed to perform contractually required work, and submitted fraudulent payment applications to IRIV. 

 The judge granted partial summary judgment for the plaintiff and against the defendants on the claims that payments on each of the seven applications had been withheld wrongfully under the provisions of the act in violation of the contract. [Note 4] The judge concluded that there was no just reason for delay in issuing judgment because "[w]hile the remaining claims will have to be separately adjudicated, the payment requisitions covered under the act are legally distinct from them and can and should be resolved separately and promptly to comport with the Legislature's will." Accordingly, the judge directed separate and final judgment to enter pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). The defendants appealed. [Note 5] We now affirm.

 Page 137 

 Discussion. 1. The contract. The contract contains terms with respect to the submission and payment of applications for periodic progress payments. Under the contract, requests for periodic payment must be submitted monthly. Specifically, it says, "The Constructor shall submit to the Owner and the Design Professional a monthly application for payment no later than the 25th Day of the calendar month for the preceding thirty (30) Days." [Note 6]

 The contract provides that, with the exception of certain types of charges not at issue here, "The Owner shall pay the amount . . . due on any payment application . . . no later than thirty (30) Days after the Constructor has submitted a complete and accurate payment application, or such shorter time period as required by applicable state statute." [Note 7] There is no statute prescribing a shorter 

 Page 138 

time for payment. [Note 8]

 The contract also gives the owner power to "adjust or reject a payment application" for a number of itemized reasons "to the extent that the Constructor is responsible under this Agreement." The contract provides that "[n]o later than fourteen (14) Days after receipt of an application for payment, the Owner shall give written notice to the Constructor, at the time of disapproving or nullifying all or part of an application for payment, stating its specific reasons for such disapproval or nullification, and the remedial actions to be taken by the Constructor in order to receive payment. When the above reasons for disapproving or nullifying an application for payment are removed, payment will be promptly made for the amount previously withheld." We may assume that this is a valid provision as, in light of our conclusion below, we need not determine whether this provision, or its references to adjustment and nullification, waive or limit any provision of the act. 

 In sum, then, under the contract, unless an application for payment is rejected, payment is due thirty days after submission of the application. Thus, under the statute, unless a rejection, in whole or in part, in compliance with the statute is made by that date, the application for periodic progress payment is "deemed approved" by operation of law, and must be paid. 

 2. The applications for periodic progress payments. Having examined the applications for periodic progress payments and the correspondence between IRIV and Tocci, we conclude that IRIV failed to issue a rejection effective under the act prior to the date payment was due with respect to any of the seven applications at issue here. Each, therefore, was deemed approved by operation of law on the date payment was due, and each became due and payable.

 The first application at issue, requisition no. 20, was submitted on June 21, 2018, for $1,012,556.73. [Note 9] The defendants did not pay $136,189 of that amount. The deadline for any rejection was July 

 Page 139 

21, 2018, or, by operation of law, the application was deemed approved and it became payable in full. The defendants point to a letter dated July 13, 2018, sent by certified mail, in which IRIV told Tocci it was in default for failure "to supply enough qualified workers on the project to satisfactorily maintain the approved schedule," and stating that if the default was not cured within seven days of receipt of the letter, IRIV would "pursue [its] rights under section 11.2.1 of the contract," which include the right to "withhold payment due to the Constructor." The letter does not, however, say that IRIV invoked that right, and it was not a rejection in compliance with the statute. By e-mail dated August 7, 2018, IRIV said that "the General Conditions and General Requirements line item for Tocci was held back," but this was not a rejection in compliance with the statute. It came after the date payment was due, contained no contractual or factual explanation, and did not contain a certification that it was made in good faith. [Note 10] The full amount of the application, therefore, was approved by operation of law and became due and payable.

 The defendants argue that the requirement of a certification is merely ministerial, but the plaintiff and the amicus brief of the Associated Subcontractors of Massachusetts, Inc., argue that it is a critical requirement. The Legislature required this certification if a rejection is to be effective, and we are not free to ignore that requirement by deeming it merely ministerial -- to do so would be to read the requirement out of the statute. In any event, the certification requirement is an essential component of the scheme set up by the statute. As this case reflects, on a complicated construction project, there may be an enormous amount of communication back and forth between the owner and the contractor. Much of it may touch on issues involving compliance with the contract, and much of it may touch on payment. The certification requirement ensures not only that the owner be deliberate about 

 Page 140 

rejecting applications for periodic progress payments, and that it takes care to reject them only in good faith, its presence on a communication also provides a clear indication to the contractor that an application has been rejected, so that the contractor can know both that some response is needed and that time periods have been triggered for invoking what remedies are available.

 The next application, requisition no. 21 was submitted on August 24, 2018, for $1,004,429.08. [Note 11] On August 28, 2018, IRIV sent an e-mail that it was withholding a total of $143,251.98 for "Thyssen" and "GC & GR," the latter presumably meaning "General Conditions and General Requirements." It paid the rest. 

 Again, the e-mail does not explain the contractual or factual basis for the deduction, nor does it contain the required certification. Under the act it was not an effective rejection, the application was deemed approved by operation of law, and the full amount became due and payable.

 The third application, requisition no. 22, was submitted on September 5, 2018, for $1,354,118.81. It has never been paid. On September 10, 2018, IRIV sent Tocci another notice of default. It did not mention payment, but merely requested copies of Tocci's subcontracts. It was not a valid rejection. 

 Requisition no. 23 was submitted on September 18, 2018, for $962,884.43, and requisition no. 24 was submitted on October 5, 2018, for $589,756.29. Neither has ever been paid. 

 On September 28, 2018, IRIV sent Tocci a long list of deficient work, including photographs, and on October 11, 2018, IRIV sent Tocci an e-mail that said in part, 

"Tocci has just sent a PCO for close to $500k on the job after I had asked repeatedly since July if the job was entirely accounted for (and you said that you thought it was). Given the lack of information, I am not confident in the accuracy of Tocci's cost management or accounting on this job. Moreover, it has been a sprint to the finish, and there remains deficient, incomplete, and uncoordinated work as reflected in 

 Page 141 

the deficiency list that we sent to Tocci September 28, 2018. Accordingly, I require the requested information to which [IRIV] is entitled to properly assess the outstanding requisitions, meaning a complete accounting of the job that breaks down each cost and each trade and compares these items to the budget Tocci provided to me in November." 

 This e-mail includes a statement that, without further information, the "outstanding requisitions" could not be "assess[ed]." It was sent before payment was due for requisition nos. 23 and 24. And at least arguably, it "include[s] an explanation of the factual and contractual basis for the rejection." G. L. c. 149, § 29E (c). It is not, however, "certified as made in good faith." Id. As a consequence, it does not amount to an effective rejection under the act. [Note 12]

 Requisition no. 25 was submitted on November 15, 2018, for $607,362.82. The record contains no response to it and, thus, no rejection.

 Requisition no. 26 was submitted on December 3, 2018, for $806,545.91. In response to this, IRIV wrote Tocci: "We would like to see the back up for" a list of items identified by name and 

 Page 142 

cost. [Note 13] Again, it did not contain the required certification and was not an effective rejection under the statute.

 Because each of the applications was deemed approved by operation of law, they became due and payable, and the defendants were not entitled to withhold payment as they did.

 The defendants argue that Tocci committed a breach of its contract and that they had good reason not to pay the applications. We may assume without deciding that that is true. But Tocci does not argue, and we do not hold, that the defendants' claims for breach of contract have been waived by their failure to include them in a proper rejection under the statute. A party that under the statute makes a periodic payment in response to an application, rather than rejecting it, may nonetheless bring any and all claims it has for breach of contract against the payee and may recoup any money it may be owed. What the statute prohibits, though, is withholding a periodic progress payment in response to an application for it without issuing a timely rejection that complies with statutory requirements. [Note 14]

 3. Separate and final judgment. The defendants also argue that separate and final judgment should not have entered, because the amounts due for the applications may be offset, or even exceeded, by amounts due to the defendants from Tocci for breach of the very same contract. But we conclude, for essentially the reasons given by the motion judge, that entry of separate and final judgment was proper. To allow the defendants to retain the moneys wrongfully withheld in violation of the statute until the final resolution 

 Page 143 

of their postcompletion contract action would eviscerate the scheme for prompt payment or rejection-and-resolution created by the Legislature. The point of the legislation is that these payments may not be withheld, even on valid grounds that they are not due because of a breach of contract, unless a timely rejection is made in compliance with the statute. If an owner does not wish to make a periodic payment pending resolution of a dispute because it believes it will not in the end owe the money, it must file a prompt rejection in compliance with the statute. Because the defendants here did not do that, they must pay what is due, even though their claims against the contractor have not yet been fully resolved.

 Conclusion. The judgment of the Superior Court pursuant to Mass. R. Civ. P. 54 (b) is affirmed. The appeal from the single justice order is dismissed.

 So ordered.

FOOTNOTES

[Note 1] Boston Harbor Industrial Development, LLC. 

[Note 2] The companion case is between the same parties. The cases were paired for oral argument. 

[Note 3] We acknowledge the amicus brief submitted by Construction Industries of Massachusetts, Inc., and Utility Contractors Association of New England, Inc., as well as the amicus brief and supplemental amicus brief submitted by Associated Subcontractors of Massachusetts, Inc. 

[Note 4] Remarkably, BHID, represented by the same counsel as IRIV, claims before us that "BHID Was Not a Party To, or Otherwise Liable Under, the Contract," that the contract was between IRIV and Tocci, that BHID is a "third party," and that "BHID and IRIV are separate and distinct legal entities and at all times operated as such with regard to the Project." Yet in the joint opposition to the motion for summary judgment filed by IRIV and BHID, they stated that "Defendant IRIV, as Manager for Owner BHID, entered into a written contract . . . with Tocci to act as General Contractor for the Project." 

 The face of the contract indicates that that is what happened, and that IRIV was acting as BHID's manager in entering the contract. Given that, inter alia, Tocci was allowed on BHID's property to do work making millions of dollars' worth of improvements to that property under the contract, BHID cannot now argue that IRIV lacked authority to enter into a contract on its behalf. See, e.g., Merrimack College v. KPMG, LLP, 480 Mass. 614, 619-620 (2018) ("in transactions with third parties, an agent's conduct will be imputed to the principal if the agent acted with actual or apparent authority, or if the principal ratified the agent's conduct"). IRIV does not argue that it is not independently bound by the contract.

[Note 5] Judgment entered on November 20, 2020. On November 30, 2020, IRIV and BHID respectively served a "Motion for Reconsideration under Superior Court Rule 9D and Mass. R. Civ. P. 59(e)[, 365 Mass. 827 (1974)]" and a "Motion for Reconsideration or to Amend Judgment under Superior Court Rule 9D and Mass. R. Civ. P. 59(e)." Each filed a notice of appeal on December 16, 2020, at the same time they filed their rule 59 (e) motions. Denials of the rule 59 (e) motions were entered on February 9, 2021. The defendants did not file new notices of appeal within thirty days. Rather, seventy-one days later, on April 21, 2021, each defendant filed a new notice of appeal and a joint motion with the single justice seeking an enlargement of time within which to file those notices of appeal. The single justice allowed the motion, writing, "Allowed. The notices of appeal filed on 4/21/21 are deemed timely-filed. See also Roch v. Mollica, 481 Mass. 164, 165 n.2 (2019)." The plaintiff has appealed from that order, arguing that the defendants did not show good cause to enlarge the time to file their notices of appeal. 

 Under the plain language of Mass. R. A. P. 4 (a) (3), as appearing in 481 Mass. 1606 (2019), the original notices of appeal were of no effect. Rule 4 (a) (3) provides, "A notice of appeal filed before the disposition of any timely motion listed in Rule 4(a)(2) shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the last such remaining motion." Among the motions listed in rule 4 (a) (2) are any motion "to alter or amend a judgment under Rule 59 or for relief from judgment under Rule 60(b), however titled, but only if either motion is served within [ten] days after entry of judgment."

 Nonetheless, in Roch, 481 Mass. at 165 n.2, the Supreme Judicial Court held that notices of appeal like the original ones filed here will bring the merits of an appeal before the appellate court where, as here, "no action on the appeal had yet been taken before the motion for reconsideration was decided." The court explained that in such circumstances, "the concerns underlying rule 4 (a) are not implicated." Id. Consequently, in the circumstances present here, no enlargement of time was necessary. We dismiss the appeal from the single justice order as moot, and turn to the merits of the underlying appeal.

[Note 6] The statute provides that "[t]he time periods for each application for a periodic progress payment shall not exceed: (i) for submission, [thirty] days, beginning with the end of the first calendar month occurring at least [fourteen] days after the person seeking payment has commenced performance." The time period for submission in the contract does not exceed that. 

[Note 7] The contract actually states that payment is "due on any payment application, as certified by the Design Professional," to whom the constructor must submit the application at the same time it is submitted to the owner. As the owner has not argued that any payment was withheld due to an absence of design professional certification, we express no opinion about the meaning or validity of this limitation, questions that are not before us. 

[Note 8] The contract allows the owner to deduct five percent of certain amounts for "retainage." The plaintiff does not seek any of this retainage amount, and so we express no opinion about the meaning or validity of this provision, questions that are not before us. 

[Note 9] The defendants suggest that each requisition was not "complete and accurate" as required by the contract because a space for certification by the architect, the design professional, was left blank. The contract, however, required the applications to be submitted to the design professional at the same time they were submitted to the owner. Even assuming the statute would allow it, the contract did not require their certification as a prerequisite to their submission. 

[Note 10] IRIV notes that on August 18, 2018, IRIV sent Tocci an e-mail that said, in part, "I am not paying anyone until I see [Tocci's] Joe [Cavallero]'s input . . . ." So far as this litigation is concerned, though, this e-mail is a sideshow. The "input" sought appears to have been about one subcontractor not doing work and substantial payments on applications for periodic progress payments continued to be made after this. This e-mail was not a rejection of any application. 

[Note 11] As we read the contract, as this requisition was for the period ending on June 30, 2018, it was due to be submitted no later than July 25, 2018. Likewise, requisition no. 22, submitted on September 5, 2018, for the period ending July 31, 2018, appears to have been due to be submitted no later than August 25, 2018. The defendants do not argue, and we do not conclude, that any lateness of these two requisitions affects the defendants' obligations under the contract and the statute triggered by their submission. 

[Note 12] The defendants point out that on November 8, 2018, counsel for IRIV wrote a letter to Tocci stating, 

"This is to advise you that as a result of Tocci's failure . . . to comply with the terms and conditions set forth in the Contract, [IRIV] and the Project owner, Boston Harbor Industrial Development LLC ('BHID'), are hereby rejecting and nullifying current and certain prior payment applications pursuant to the terms of the Contract. . . . Absent required support for the time and materials charges being submitted, [IRIV] hereby rejects the pending payment applications. . . . Section 9.3.4 of the Contract permits adjustment, rejection, and revocation of payment applications due to a failure to timely correct nonconforming or Defective Work. [The letter then described alleged deficient work.] . . . Section 9.3.5 of the Contract permits adjustment, rejection, and revocation of payment applications where delay in performance indicates that the Work will not be completed within the Contract Time. [The letter then described alleged failures to complete work timely.] . . . Given the foregoing, BHID hereby advises Tocci that in order to ensure adequate funds to correct Defective Work, complete remaining work, and pay for third-party damages resulting from Project delay, it is withholding payment on the pending payment applications totaling $3,186,200.51." 

This was not sent by the date payment was due on any of the previously submitted applications and thus could not have been an effective rejection under the act.

[Note 13] In the same e-mail, IRIV also asked for 

"a complete accounting of all Tocci employees' time on the job for the duration of the project as well as the rates associated with each position. I would like copies of the daily work log, sub-contractor weekly meeting minutes, MEP coordination meeting minutes, progress photographs, all copies of subcontractor on site quality control correspondence and log, material purchase logs, correspondence for sub-contractor damage to other trade's work product, copies of back charge change orders, safety and incident reports, MEP testing sign off reports (by Tocci), material testing sign in logs and results, in wall sign off logs, monthly schedule updates, delivery logs, and final as built drawings (in particular those areas in which critical building function items differ from design). Along with the above requests please identify which Tocci employee/employees were responsible for the project control documents we are requesting."

[Note 14] In their counterclaims, the defendants have apparently brought claims for breach of contract against Tocci. We express no opinion on the merits of those counterclaims or any defenses thereto. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.