NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13507

BUSINESS INTERIORS FLOOR COVERING BUSINESS TRUST  vs.  GRAYCOR CONSTRUCTION COMPANY INC. & others.[1]


Suffolk.    February 7, 2024. - June 17, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.


Contract, Construction contract, Subcontract, Performance and
     breach, Impossibility of performance.  Practice, Civil,
     Affirmative defense, Judgment, Summary judgment.  Payment.
     Time.  Judgment.



     Civil action commenced in the Superior Court Department on September 15, 2020.

     The case was heard by Diane C. Freniere, J., on a motion for summary judgment, and entry of separate and final judgment was ordered by her.

     The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


     Matthew B. Lysiak (Mark B. Lavoie also present) for Graycor Construction Company Inc.
     Andrew R. Dennington (Ryan O. Forgione also present) for the plaintiff.

---

     [1] Pacific Theatres Exhibition Corp.; Podium Developer LLC; and Podium Owner, LP.

Joseph A. Barra, for Associated Subcontractors of Massachusetts, Inc., amicus curiae, submitted a brief.

Joel Lewin, Christopher W. Morog, Robert T. Ferguson, Jr., Garrison Doodlesack, & Isha Kumar, for Construction Industries of Massachusetts, Inc., amicus curiae, submitted a brief.

KAFKER, J.  The prompt pay act, G. L. c. 149, § 29E (prompt pay act or act), which we interpret for the first time in this case, requires that parties to a construction contract approve or reject payment within strict time limits and provides procedures for doing so.  If the payor does not approve or reject a payment application within the act's set time limit, the application is "deemed to be approved."  G. L. c. 149, § 29E (c).

Graycor Construction Company Inc. (Graycor), a general contractor for a movie theater project in Boston's North End section, entered into a subcontract with Business Interiors Floor Covering Business Trust (Business Interiors).  Graycor failed to approve or reject three separate applications for periodic payments made by Business Interiors for the flooring work it performed on the project.  Business Interiors sued Graycor in the Superior Court for breach of contract and other claims.  The Superior Court granted Business Interiors's motion for summary judgment on its breach of contract claim and entered separate and final judgment.  Graycor appealed.

On appeal, Graycor asserts that there is a question of material fact as to whether the original contract is a "contract for construction" within the meaning of the act, because the prompt pay act references liens pursuant to G. L. c. 254, §§ 2 and 4, in its definition of a contract for construction, and no such lien could have been imposed at the time of the lawsuit. Additionally, Graycor argues it has a valid impossibility defense to its failure to pay.  Business Interiors argues Graycor waived any such claims and, regardless, Graycor's arguments are without merit.

We hold that the prompt pay act cross-references liens that "may be established under sections 2 or 4 of chapter 254" for a limited purpose:  to define in broad terms the types of contracts subject to the act.  G. L. c. 149, § 29E (a).  The strict compliance requirements for enforcement of particular liens do not apply, as Graycor contends.  Additionally, we hold that under the act, a party does not waive its defenses by failing to approve or reject an invoice within the strict time requirements established by the act.  However, a party that neither approves nor rejects a payment application within the requisite time must first make the payment in order to pursue any defenses in a subsequent proceeding related to the invoices, as the invoices have been deemed "approved."  The invoice payments must be made prior to, or contemporaneous with, the

raising of the defenses, or the defenses cannot be raised. As Graycor sought to exercise its defenses in this litigation without ever paying the invoices, it may not pursue the defenses. Summary judgment was therefore properly allowed on the breach of contract claim.

This case also raises an important procedural question regarding the proper application of separate and final judgment pursuant to the prompt pay act. The fact that a payment has been withheld in violation of the act does not, alone, merit the entry of a separate and final judgment as the Appeals Court held in Tocci Bldg. Corp. v. IRIV Partners, LLC, 101 Mass. App. Ct. 133 (2022) (Tocci), a decision relied upon by the motion judge in the instant case. Rather, claims, cross claims, and counterclaims must all be carefully examined together to determine whether the various elements of Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), are satisfied. Here, no such examination took place, so we vacate and remand the rule 54 (b) certification to the motion judge for reconsideration.[2]

1. Background. a. Facts. In November 2018, Graycor entered into a general contract with Pacific Theatres Exhibition Corp. (Pacific) for the construction of a multi-screen movie

---

[2] We acknowledge the amicus briefs submitted by Associated Subcontractors of Massachusetts, Inc.; and Construction Industries of Massachusetts, Inc., and Utility Contractors Association of New England, Inc.

theater known as ArcLight Boston Garden on property that Pacific leased from Podium Owner, LP, the owner of the property.  The original maximum price for constructing the movie theater was $18,962,890.  Graycor in turn executed a subcontract with Business Interiors for Business Interiors to complete the flooring for the movie theater.  The subcontract had an original total price of $528,426.  Change orders increased the final subcontract price to $608,158.

The subcontract includes various provisions addressing periodic payments, including the requirement that

> "[t]he Subcontractor [Business Interiors] shall submit its periodic applications for payment of the Subcontract Price (the 'Periodic Application') on a form acceptable to Contractor [Graycor] not later than the 15th calendar day of the month . . . .

> "Subject to the other terms of the Subcontract, the Contractor will make payment of a Periodic Application for payment promptly upon the Contractor's receipt of payment from the Owner [Pacific] for the Work that is the subject of the Periodic Application, but in no event later than the date required by applicable law."

On March 20, 2020, Business Interiors submitted an application for payment no. 19 to Graycor, seeking to be paid $75,745.40.  Graycor did not dispute the dollar amount listed, nor did it provide written notice rejecting the application. Nevertheless, Graycor did not pay Business Interiors any portion of the $75,745.40.  On April 22, 2020, Business Interiors submitted an application for payment no. 20 to Graycor for

$26,421.30.  Again, Graycor did not dispute the dollar amounts, nor did it provide written notice rejecting the application, but it did not pay any portion of the $26,421.30 requested.  On August 18, 2020, Business Interiors submitted its final application for payment in the amount of $25,022.30.  As with the other two applications for payment, Graycor did not dispute the dollar amount, provided no written notice rejecting Business Interiors's final application for payment, and did not pay any portion of the $25,022.30 itemized in the final application for payment.

Around the same time, Graycor was itself attempting to get paid by Pacific, which was experiencing financial difficulties due to the COVID-19 pandemic.  In late March 2020, a Graycor project manager sent an e-mail message to Pacific's director of finance to determine the status of several overdue unpaid invoices.  Pacific's director of finance responded that "due to COVID-19, all our theaters were forced to close and at this time we do not have any revenue coming in" and "all of our payables are being held until further notice."  After that, based on the record before us, it appears that communication between Pacific and Graycor ceased.

b.  Procedural history.  In September 2020, Business Interiors sued Graycor; Pacific; Podium Developer LLC; and

Podium Owner, LP,[3] in the Superior Court, seeking to recover the unpaid balances. Specifically, Business Interiors sued Graycor for breach of contract, breach of the covenant of good faith and fair dealing, violation of G. L. c. 93A, and quantum meruit. Business Interiors's claims centered on Graycor's failure to pay or formally dispute the three applications for payment within the time period defined by the prompt pay act. Graycor, in its answer, brought cross claims against Pacific and Podium for breach of contract, quantum meruit, common-law indemnity, contribution, unjust enrichment, and violation of G. L. c. 93A.

In June 2022, Business Interiors served the parties with a motion for summary judgment on its breach of contract (count I) claim against Graycor. In response, Graycor, for the first time, raised an impossibility defense. At a December 2022 hearing on the motion, Graycor also argued for the first time that the subcontract was not covered by the prompt pay act because it was not eligible for a lien under G. L. c. 254, § 2 or 4, at the time the lawsuit was brought. In February 2023, the motion judge allowed summary judgment in favor of Business Interiors on its breach of contract claim, ruling that Graycor committed a breach of its subcontract with Business Interiors by

---

[3] Podium Owner, LP, was the owner of the underlying real estate, and Podium Developer LLC was the ground tenant under a long-term ground lease with Podium Owner, LP. We refer to the two Podium entities simply as "Podium."

failing to submit written rejections of the three applications for payment within the time periods required by the prompt pay act. In her decision, the motion judge explained that the subcontract had incorporated the act's provisions into the subcontract. The motion judge did not address the issue raised for the first time at the hearing that the subcontract was not subject to the act. Relying on Tocci, 101 Mass. App. Ct. 133, the motion judge entered separate and final judgment, pursuant to Mass. R. Civ. P. 54 (b), as to the money withheld by Graycor in violation of the act. Graycor timely appealed, and we transferred the case from the Appeals Court on our own motion.

2. Discussion. a. Standard of review. We review the Superior Court's grant of summary judgment de novo. Adams v. Schneider Elec. USA, 492 Mass. 271, 280 (2023). "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law. We review the evidence in the light most favorable to the party against whom summary judgment entered," in this case, Graycor (quotations and alteration omitted). Id., quoting Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 148-149 (2023).

b. Prompt pay act. The prompt pay act, like any other statute, "must be interpreted according to the intent of the Legislature ascertained from all its words construed by the

ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (citation omitted).  Reuter v. Methuen, 489 Mass. 465, 470 (2022).  We also do not interpret words in the statute in isolation; we "look to the statutory scheme as a whole so as to produce internal consistency within the statute" (quotations and citations omitted).  Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).

i.  Statutory framework of the act.  The act "applies to certain private contracts for construction with respect to projects for the erection, alteration, repair, or removal of buildings or structures, or for other improvements to real property, where the 'contract with the project owner has an original contract price of $3,000,000 or more.'"  Tocci, 101 Mass. App. Ct. at 134, quoting G. L. c. 149, § 29E (a).  According to the act, "contracts for construction" are contracts "for which a lien may be established under [G. L. c. 254, § 2 or 4]."  G. L. c. 149, § 29E (a).

The act provides that

"[e]very contract for construction shall provide reasonable time periods within which:  (i) a person seeking payment under the contract shall submit written applications for periodic progress payments; (ii) the person receiving the application shall approve or reject the application,

whether in whole or in part; and (iii) the person approving the application shall pay the amount approved."

G. L. c. 149, § 29E (c).  For submission of payment, the time period is a maximum of thirty days, "beginning with the end of the first calendar month occurring at least [fourteen] days after the person seeking payment has commenced performance." Id.  For approval or rejection of an application for payment, the time period is a maximum of fifteen days after submission of the application, though this time period "may be extended by [seven] days" for "each tier of contract below the owner of the project."  Id.  Payment must be generally made forty-five days after the application for payment is approved.  Id.

According to the act, "[a]n application for a periodic progress payment which is neither approved nor rejected within the time period shall be deemed to be approved unless it is rejected before the date payment is due."  G. L. c. 149, § 29E (c).  The act requires that a rejection of an application for payment "be made in writing" and "include an explanation of the factual and contractual basis for the rejection," along with a certification that the rejection is "made in good faith."  Id. If rejected, the application "shall be subject to the applicable dispute resolution procedure" provided in the construction contract.  Id.  In addition, the act provides that, subject to a few exceptions, any provision in a "contract for construction

which makes payment to a person performing the construction conditioned upon receipt of payment from a third person that is not a party to the contract shall be void and unenforceable." G. L. c. 149, § 29E (e).  Further, any contractual provision "which purports to waive or limit any provisions of [the act] shall be void and unenforceable."  G. L. c. 149, § 29E (g).

Under the plain language of the act, Graycor had twenty-two days from the date of submission of each of Business Interiors's three applications for payment to approve or reject the application.[4]  However, Graycor neither approved nor rejected Business Interiors's applications within these time periods. Thus, according to the act, all three applications for payment were "deemed to be approved," and Graycor was required to pay them.  G. L. c. 149, § 29E (c).

Graycor and Business Interiors appear to agree on this basic requirement of the act but disagree over whether this decides the question of summary judgment on count I.  Graycor disputes whether the subcontract between it and Business Interiors is a "contract for construction" as defined by G. L. c. 149, § 29E (a), arguing that there is a triable issue of fact

---

[4] Graycor had twenty-two days because it had (a) the initial fifteen days prescribed by the act plus (b) an additional seven days because Business Interiors was a subcontractor and thus was one tier below the original contract between Pacific and Graycor.

as to whether the contract was eligible for a lien under G. L. c. 254, § 2 or 4.  Further, Graycor contends it has a viable impossibility defense due to the intervening COVID-19 pandemic, which resulted in Pacific ceasing payments to Graycor.  Business Interiors contends that both issues were waived, and if they were not, neither has merit.  We address each issue in turn.

ii.  Definition of "contract for construction."  We conclude that the issue whether the subcontract meets the definition of a "contract for construction," which was raised for the first time at the hearing on the summary judgment motion, was not properly raised, and that it was not an abuse of discretion for the motion judge to disregard it.  Cf. Boss v. Leverett, 484 Mass. 553, 563 (2020) (finding argument not properly presented where issue was not clearly raised in cross motion for summary judgment).  However, because Graycor presents an undecided question regarding the meaning of "contract for construction" in the act, we address the merits.  See Clark v. Rowe, 428 Mass. 339, 341 (1998) ("Although the issue was not preserved for appellate review, the question . . . is unanswered in this Commonwealth.  The issue is fully briefed and likely to arise in other cases.  We choose in our discretion to discuss the issue" [footnote omitted]).  We conclude, as a matter of law, that the subcontract at issue is a "contract for construction" under the prompt pay act.

The act defines a "contract for construction" as "a contract for which a lien may be established under [G. L. c. 254, § 2 or 4,] on a project for which the person whose contract with the project owner has an original contract price of $3,000,000 or more."  G. L. c. 149, § 29E (a).  Under G. L. c. 254, § 2:

"A person entering into a written contract with the owner of any interest in real property, or with any person acting for, on behalf of, or with the consent of such owner for the whole or part of the erection, alteration, repair or removal of a building, structure, or other improvement to real property, or for furnishing material or rental equipment, appliances, or tools therefor, shall have a lien upon such real property . . . owned by the party with whom or on behalf of whom the contract was entered into . . . when notice of said contract is filed or recorded in the registry of deeds . . . ."

While G. L. c. 254, § 4, provides for subcontractor liens:

"Whoever furnishes labor, . . . or who furnishes material, or both labor and material, or furnishes rental equipment, appliances or tools, or who performs professional services, under a written contract with a contractor, or with a subcontractor of such contractor, may file or record in the registry of deeds . . . a notice of his contract . . . . Upon filing or recording a notice . . . and giving actual notice to the owner of such filing, the subcontractor shall have a lien upon such real property . . . owned by the party who entered into the original contract . . . ."

The original contract price is over $3 million, so the only issue is whether the subcontract is "a contract for which a lien may be established under" G. L. c. 254, § 2 or 4.  Graycor argues that because any lien that might have been established on the real property interest owned by Pacific, the party that

entered into the original contract, would have been dissolved when Pacific's lease with the owner was terminated, there is a triable issue whether Graycor and Business Interiors's subcontract meets the definition of a "contract for construction" under G. L. c. 149, § 29E (a). We disagree.

By referencing contracts for which liens "may be established" pursuant to G. L. c. 254, §§ 2 and 4, the prompt pay act defines its scope broadly, not narrowly. It does so in two respects. First, it refers to construction contracts for which liens "may be established," not to contracts for which liens have been established, and thus, in defining its scope, it does not impose the strict compliance requirements necessary for the enforcement of particular liens as apparently argued by Graycor. Second, G. L. c. 254, §§ 2 and 4, describe a very wide range of construction contracts for which liens may be created. Thus, G. L. c. 254, §§ 2 and 4, are referenced in the prompt pay act not to narrow the act's applicability, but to demonstrate that the act encompasses within its ambit a broad scope of construction contracting.

Even Graycor recognizes that, at least when the contract was entered into, Business Interiors might have established a lien pursuant to G. L. c. 254, § 4, against Pacific's leasehold interest. It just argues that "[a]t the time [Business Interiors] filed this lawsuit on September 15, 2020, Podium

Developer LLC, the holder of the ground lease and landlord for the subject project, terminated Pacific's lease," and thus any lien would have been dissolved. See Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 357 (2011) ("As a general matter, a lien on a leasehold is extinguished when the rights of the lessee expire"). As this is not a lien enforcement action, however, the only issue is whether a lien may have been established pursuant to this subcontract.[5] Here that requirement was clearly met at least at the time the subcontract was executed. Put more simply, this was the type of construction contract for which a lien pursuant to G. L. c. 254, § 2 or 4, might have been established.

   iii. Availability of common-law defenses under the act. The primary issue presented in this case is whether the prompt pay act precludes a general contractor from asserting common-law affirmative defenses to a breach of contract claim based on the failure to pay. As discussed supra, the act provides: "An

---

[5] Business Interiors moves to strike from the record appendix the lease termination document included by Graycor on the ground that, in violation of Mass. R. A. P. 16 (e), as appearing in 481 Mass. 1628 (2019), and Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019), the lease termination document was never submitted as part of the record before the Superior Court and Graycor failed to obtain leave of this court to include the document. Because our decision does not rest on the lease termination document, we need not consider the motion. See Matter of the Discipline of an Attorney, 442 Mass. 660, 674 n.29 (2004).

application for a periodic progress payment which is neither approved nor rejected within the time period shall be deemed to be approved unless it is rejected before the date payment is due." G. L. c. 149, § 29E (c). The act does not, however, address common-law defenses. We conclude that common-law defenses are not precluded by the act, even if a contractor fails to approve or reject an application for payment as required. However, a contractor that does not approve or reject an application for payment in compliance with the time periods and other requirements of the act must pay the amount due prior to, or contemporaneous with, the invocation of any common-law defenses in any subsequent proceeding regarding enforcement of the invoices. In the instant case, no such payment was made.[6]

"[A] statutory repeal of the common law will not be lightly inferred; the Legislature's 'intent must be manifest.'" Passatempo v. McMenimen, 461 Mass. 279, 290 (2012), quoting Comey v. Hill, 387 Mass. 11, 20 (1982). The Legislature's

---

[6] Justice Wendlandt's opinion, concurring in part and dissenting in part (concurrence-dissent), incorrectly states that the claim is waived upon the filing of any responsive pleading to a claim for breach of contract against a nonpaying contractor. See post at    . The claim is preserved as long as the invoice is paid no later than when the defense is first presented in such a proceeding. Put simply, a contractor is free to raise defenses, provided it pays the invoice before or contemporaneously with raising those defenses. What the contractor cannot do is what Graycor did here, raise the defenses without paying the invoice.

"intent may be 'clearly expressed' in one of two ways:  by words in the statute itself clearly stating that the statute supersedes the common law, or by 'necessary implication.'" Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 590 (2019), quoting Lipsitt v. Plaud, 466 Mass. 240, 244 (2013).  "A statute preempts common-law doctrine by necessary implication where the doctrine is so repugnant to and inconsistent with the statute that both cannot stand" (quotations and citation omitted). McLaughlin, supra at 591.  In other words, "[c]an the common-law doctrine [at issue] and the statute reasonably coexist in harmony, or must the common-law doctrine necessarily give way in order to effectuate the purpose of the statute?"  Id.

We emphasize that the act does not expressly preempt all common-law defenses to breach of contract.  If the Legislature intended for the failure to accept or reject payment within the tight time frames established by the act to eliminate all common-law defenses, "we think it would have done so explicitly" (citation omitted).  See Lipsitt, 466 Mass. at 248-249.  We likewise conclude that the act does not completely eliminate common-law defenses by necessary implication.  Rather the statutory requirements and the common-law defenses can coexist, so long as payment is required to be made prior to, or contemporaneous with, the raising of any such defenses in any proceeding relating to the enforcement of such invoices.  See

McLaughlin, 482 Mass. at 591.  More precisely, as explained by Associated Subcontractors of Massachusetts, Inc. (ASM), in its amicus brief:  "To the extent the [contractor] has any viable contract or common[-]law defenses to payment, such defenses are still available for presentation in a subsequent forum.  However, the contractor must first pay the funds purportedly owed and then seek to disgorge such funds in a succeeding adjudication."[7]

In sum, payment of overdue approved invoices must be made prior to, or contemporaneous with, raising common-law defenses, or the defenses cannot be raised.[8]

_____

[7] This reading of the act is buttressed by the legislative history.  While the act provides significant protections to subcontractors, the legislation was subject to heavy lobbying by both contractors and subcontractors, and it was ultimately the product of a hard-fought compromise.  Cheney, New Law Requires "Prompt Pay" for Construction Contractors, State House News Service, Aug. 16, 2010.  While contractors had previously opposed a broader version of the bill, "the most objectionable elements" of the legislation, in their view, were successfully "negotiated out."  Id.  The informed interpretation of the ASM in its amicus brief, which we discuss and adopt supra, reflects this hard-fought compromise. See generally Bantz, Legislation in Mass. Promises Major Changes for Construction Law Bar, Massachusetts Lawyers Weekly, Aug. 30, 2010 (noting that ASM "spent five years working to get the bill passed").  The legislation did not eliminate contractor defenses altogether, as Business Interiors argues, or have no meaningful consequence, as Graycor contends, but rather requires a contractor to pay the invoices in order to exercise its defenses.

[8] In some cases, preliminary injunctions ordering immediate payment of outstanding invoices may also be justified when the failure to pay an invoice causes irreparable harm to a

We conclude that such a reading of the statute is a
necessary implication of it.  The Legislature's determination --
that the failure to accept or reject a periodic payment
application within the defined time requirements is deemed an
approval of the payment -- must have meaningful consequences.[9]
Allowing common-law defenses to be raised and pursued without
paying the now "deemed to be approved" invoices would render

_____

subcontractor's business.  See Massachusetts Port Auth. v. Turo
Inc., 487 Mass. 235, 247 (2021), quoting GTE Prods. Corp. v.
Stewart, 414 Mass. 721, 724 (1993) ("A plaintiff experiences
irreparable injury if there is no adequate remedy at final
judgment").  While economic harm alone does not usually rise to
the level of irreparable harm, economic loss "may constitute
irreparable harm where the loss threatens the very existence of
the movant's business."  Hull Mun. Lighting Plant v.
Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643
(1987).  Moreover, the combination of noneconomic and economic
harm may constitute irreparable harm.  See Loyal Order of Moose,
Inc., Yarmouth Lodge # 2270 v. Board of Health of Yarmouth, 439
Mass. 597, 603 (2003) (smoking ban caused irreparable harm to
lodge where ban caused both substantial decrease in revenue and
"the likelihood that employees will be laid off and the hours of
operation diminished").  We do not decide whether such
injunctive relief would have been justified in the instant case,
as no such injunctive relief was sought.

[9] The concurrence-dissent asserts that "[t]he act provides
no private right of action or alternative mechanism to
subcontractors to secure prompt payment."  Post at note 2.  This
ignores the explicit statutory mandate to include the prompt
payment provisions in all applicable construction contracts,
which are of course then enforceable by the private parties in a
breach of contract claim.  See G. L. c. 149, § 29E (c), (d)
("Every contract for construction shall provide reasonable time
periods . . ." [emphasis added]).  Moreover, any contract terms
contrary to the act are void and unenforceable.  G. L. c. 149,
§ 29E (g).

this approval to be of no import.[10]  This "is so repugnant to and inconsistent with the statute that both cannot stand" (quotations and citation omitted).  McLaughlin, 482 Mass. at 591.  Thus, in contrast to a complete waiver, the payment of the amounts due in order to raise common-law defenses is a necessary implication of the "deemed approved" provision in the statute.

In the instant case, however, Graycor sought to raise and pursue defenses without ever paying the invoices.  This it cannot do.  Summary judgment was therefore properly allowed on count I of Business Interiors's complaint.

c.  Separate and final judgment.  Relying on the reasoning of the Appeals Court in Tocci, the Superior Court issued a separate and final judgment on count I of Business Interiors's

---

[10] According to the concurrence-dissent, the only consequence to a contractor that fails to pay an approved invoice is that the contractor would be in material breach of the contract.  See post at    ,    .  It is not surprising that this issue is neither raised nor addressed by the parties.  That is perhaps because there is "little doubt" that the repeated failure to pay approved invoices would be a material breach and would excuse the nonbreaching party from its obligations for further performance under the contract.  See G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 734 (2018).  This, however, does not address the issue of defenses, as a breaching party may of course raise defenses to a material breach of contract.  See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 470-471 (1991) (analyzing breaching party's defense that nonbreaching party's postbreach conduct waived its claim).  The concurrence-dissent therefore provides no significant meaning or consequence to the "deemed approved" provision of the act.  See Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 412 (2009) ("A statute should be construed so as to give effect to each word . . .").

complaint. Because we conclude that the prompt pay act, particularly as clarified by our decision today, requires a traditional and not truncated Mass. R. Civ. P. 54 (b) analysis, we briefly address this issue as well, and vacate the rule 54 (b) certification decision. See Long v. Wickett, 50 Mass. App. Ct. 380, 385 n.6 (2000) ("because important policy interests are implicated . . . we raise and resolve the issue [of rule 54 (b) certification] sua sponte")

In Tocci, 101 Mass. App. Ct. at 142-143, rather than conducting a traditional analysis of the factors required for rule 54 (b) certification, the Appeals Court concluded that separate and final judgment was proper because "[t]o allow the defendants to retain the moneys wrongfully withheld in violation of the statute until the final resolution of their postcompletion contract action would eviscerate the scheme for prompt payment or rejection-and-resolution created by the Legislature." Nothing, however, in the act's text indicates that the Legislature intended the prompt pay act to provide for immediate appeals of the failure to accept or reject a periodic payment.[11] See DeCosmo v. Blue Tarp Redev., LLC, 487 Mass. 690,

---

[11] Moreover, nothing in the legislative history indicates any inclination by the Legislature to permit interlocutory appeals. The legislative record is entirely silent on the question of appellate review.

695 (2021) ("If the [statute's] language is clear and unambiguous, it must be interpreted as written" [citation omitted]). "[A]bsent special authorization, an appellate court will reject attempts to obtain piecemeal review of trial rulings that do not represent final dispositions on the merits" (quotations and alteration omitted). Fabre v. Walton, 436 Mass. 517, 520-521 (2002), S.C., 441 Mass. 9 (2004), quoting Ashford v. Massachusetts Bay Transp. Auth., 421 Mass. 563, 565 (1995). The unduly expansive interpretation of the preemptive effect of the act's "scheme" set out in Tocci, and adopted by the motion judge here, undermines the ordinary principles cautioning against interlocutory appeals.

We therefore emphasize that the traditional rule 54 (b) requirements apply in prompt pay act cases and the truncated analysis applied by the Appeals Court in Tocci does not.[12] In the instant case, we have multiple claims by Business Interiors

---

[12] We note that the Appeals Court in Tocci, and the motion judge here, did not have the benefit of this decision. Also, as a practical matter, the requirement that a contractor pay the invoices prior to, or contemporaneous with, the raising of any common-law defenses should address the particular problem with which the Superior Court was presented here under rule 54 (b), that is, whether to allow a patent violation of the prompt pay act to go unresolved while the litigation over that violation continued. When the invoice is actually paid to preserve the defense, the issue that was of most concern to the Superior Court in this case and the Appeals Court in Tocci is, for rule 54 (b) purposes, obviously no longer present.

against Graycor, Pacific, and Podium in addition to its prompt pay act claim,[13] and cross claims by Graycor against Podium and Pacific.[14] All of these additional claims should have been considered as part of the motion judge's rule 54 (b) analysis, but they were not, due to the motion judge's reliance on the abbreviated analysis in Tocci. See Barbetti v. Stempniewicz, 490 Mass. 98, 104 (2022), quoting Long, 50 Mass. App. Ct. at 391 ("To satisfy the requirements of rule 54 [b] . . . the claim [finally] adjudicated must be a 'claim for relief' separable from and independent of the remaining claims in the case"); Long, supra at 390-391 ("Although claims and counterclaims are generally considered separate claims under rule 54 [b], the presence of a counterclaim weighs heavily against the grant of 54 [b] certification, particularly when there is a substantial interdependence and overlap between dismissed claims and pending counterclaims" [citations, quotations, and alterations

---

[13] Business Interiors brought additional claims alleging breach of the covenant of good faith and fair dealing, violation of G. L. c. 93A, and quantum meruit against Graycor, as well as quantum meruit claims against Pacific and quantum meruit and unjust enrichment claims against Podium. It also represents that it is prepared to dismiss its claims against Graycor if the invoice payment is made and its attorney's fees are paid.

[14] In its answer to Business Interiors's complaint, Graycor brought cross claims against Pacific and Podium alleging breach of contract, quantum meruit, common-law indemnity, contribution, unjust enrichment, and violation of G. L. c. 93A.

omitted]).  See also <u>Yanis</u> v. <u>Paquin</u>, 96 Mass. App. Ct. 134, 140 n.12 (2019) (extending counterclaim analysis in rule 54 [b] context to cross claims).  All of this requires a reversal and remand of the rule 54 (b) certification.[15]

3.  <u>Conclusion</u>.[16]  The certification and entry, pursuant to Mass. R. Civ. P. 54 (b), of the partial judgment for Business Interiors on count I of the complaint is vacated; the order on summary judgment is restored to its status under the second sentence of rule 54 (b); and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.

---

[15] Finally, the concurrence-dissent's suggestion that we leave the plaintiff with a Pyrrhic victory is confusing to say the least, especially given its recognition that separate and final judgment was improperly allowed.  See <u>post</u> at    .  We have not definitively ruled on the rule 54 (b) motion, we have just stated that the correct legal standards need to be applied. We have also in no way suggested that a preliminary injunction would not have been appropriate here, if the requirements of irreparable harm had been met, but no such relief was requested. Consequently, it is the concurrence-dissent, by not requiring the payment of invoices prior to, or contemporaneous with, the exercise of defenses, that leaves all subcontractors with less protection, or in the words of the concurrence-dissent, a Pyrrhic victory, against such improper payment practices by contractors in the future.

[16] Because multiple claims and cross claims remain outstanding, we do not reach the question whether Business Interiors is entitled to attorney's fees and costs.  As the Superior Court stated, "the case has not been entirely resolved," and thus, "the issue of attorney's fees and costs is best addressed all at once at the conclusion of the litigation."

WENDLANDT, J. (concurring in part and dissenting in part, with whom Dewar, J., joins). Time is of the essence under the prompt pay act, G. L. c. 149, § 29E (act), as the name suggests; it mandates that construction contracts include provisions that require timely payment of invoices. G. L. c. 149, § 29E (c) ("Every contract for construction shall provide reasonable time periods within which: [i] a person . . . shall submit written applications for . . . payments; [ii] the person receiving the application shall approve or reject the application . . . ; and [iii] the person approving the application shall pay the amount approved"). These prompt payment provisions, the court rightly concludes, required Graycor Construction Company Inc. (Graycor) to accept or reject Business Interiors Floor Covering Business Trust (Business Interiors) invoices within the specified time frame. See ante at    . Having not done so, the invoices are "deemed to be approved," see G. L. c. 149, § 29E (c), and Graycor was required to promptly pay the owed funds.[1] In other words, Graycor is in material breach of the agreement not only because it failed to pay Business Interiors's invoices but

_____

[1] The time frame for payment pursuant to the act was incorporated into the contract. The price and billing requirements attachment to the contract states, "the Contractor will make payment of a Periodic Application for payment promptly upon the Contractor's receipt of payment from the Owner for the Work that is the subject of the Periodic Application, but in no event later than the date required by applicable law" (emphasis added). See ante at    .

because it failed to pay those invoices promptly.  G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 733-734 (2018), quoting EventMonitor, Inc. v. Leness, 473 Mass. 540, 546 (2016) ("a material breach of a contract occurs when the breach concerns an 'essential and inducing feature of the contract'").

I also agree with the court that, under the act, failure to make timely payments does not waive defenses to breach of contract.  See ante at    .  Nothing in the act itself suggests such a waiver.  See G. L. c. 149, § 29E (c)-(g).  And, such a waiver is unsupported by the legislative history, which shows the act's terms were the result of a hard-fought compromise in which the Legislature ultimately chose not to enact stronger statutory remedies to address untimely payments.  See Cheney, New Law Requires "Prompt Pay" for Construction Contractors, State House News Service, Aug. 16, 2010 ("The bill was the subject of a torrent of lobbying," and during "contentious" negotiations, "[c]ontractors . . . negotiated out" certain elements of bill).  See, e.g., House Bill No. 1789 (Jan. 2007) (earlier version of bill providing additionally for recovery of interest on unpaid amounts as well as attorney's fees).  As a result, the court properly concludes that such defenses are preserved and may be asserted in a subsequent claim.  See, e.g., Suffolk Constr. Co. v. Benchmark Mechanical Sys., Inc., 475 Mass. 150, 154-155 (2016) (allowing contractor to pursue unjust

enrichment claim against subcontractor and bank after it mistakenly paid subcontractor).

And I agree with the court's holding that the act provides no basis for dispensing with our usual stringent standard for entry of separate and final judgment under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).  See Barbetti v. Stempniewicz, 490 Mass. 98, 103 (2022).  In the absence of a specific provision so stating, the act's goal that subcontractors be paid timely does not dispense with the ordinary rules of civil procedure and their disfavor for piecemeal appeals.

I write separately because I disagree with the court's further creation of a remedy unsupported by the act -- namely, its decision to deem these defenses, which the court agrees are preserved, nevertheless, to be waived upon the filing of any responsive pleading to a claim for breach of contract against a nonpaying contractor like Graycor.  Once the responsive pleading to the suit is filed, the previously preserved defenses vanish, according to the court.  See ante at note 6.

But the act merely requires the inclusion of specific terms in construction contracts governing the processing of payments, which can be enforced through a breach of contract claim.[2]  The

---

[2] The act provides no private right of action or alternative mechanism to subcontractors to secure prompt payment.

Legislature chose to go no further. Contrast, e.g., House Bill No. 4730 (May 8, 2008) (earlier version of bill more broadly establishing "rights and obligations prescribed by . . . statute," including that parties to construction contracts "shall make all payments in accordance with the terms of that contract, which shall be in accordance with the provisions of this section"). For better or worse, this is a feature of the act, not a latent error to be fixed by judicial fiat. See Commonwealth v. Calvaire, 476 Mass. 242, 245 (2017) ("We do not read into the statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include" [citation omitted]). Indeed, analysis of the act and its history shows, as the court concludes, that no such waiver formed any part of the compromise legislation. See ante at note 7.

Contrary to the court's assertion, see ante at    , the act still has "meaningful consequences." For example, subject to certain conditions, the act renders "void and unenforceable" contractual terms that purport to require a subcontractor who has not been paid timely to continue to work. G. L. c. 149, § 29E (f). Moreover, payment delayed beyond the time frame set forth by the contractual provisions required by the act constitutes a material breach giving rise to a claim for breach of contract. This does not mean that a subcontractor always

must await resolution of defenses to the breach of contract claim before obtaining payment for the invoices "deemed . . . approved"; a subcontractor can bring a motion for a preliminary injunction, if it can show (1) a likelihood of success on the merits;[3] (2) that irreparable harm will result from denial of the injunction;[4] and (3) that, in light of its likelihood of success on the merits, the risk of irreparable harm outweighs the potential harm to the breaching party.[5]  See Boston Firefighters

---

[3] The likelihood of success on the merits prong of the preliminary injunction standard is met where, as here, a subcontractor has not been paid timely as required by the contractual provisions mandated by the act.  See Doe v. Worcester Pub. Sch., 484 Mass. 598, 601-603 (2020) (likelihood of success on merits where school district's action failed to abide by unambiguous statutory language that expelled student receive hearing with superintendent).

[4] Economic loss can meet this prong only where nonpayment "threatens the very existence of [the] business."  Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987) (municipal lighting company's nonpayment constituted irreparable harm to electric wholesaler because wholesaler "relie[d] solely on payments from municipal lighting companies to meet its bond obligations").  Thus, while a preliminary injunction will be unavailable to parties who are not at risk of such dire consequences, the tool may be used by the most vulnerable parties whom the act targeted for protection.  See Cheney, New Law Requires "Prompt Pay" for Construction Contractors, State House News Service, Aug. 16, 2010 (describing act as "a lifeline to aggrieved construction [sub]contractors . . . many of which . . . reduced staffing levels or [went] out of business altogether" and for which "slow payment ha[d] become [the] single most important business issue").

[5] The act demonstrates the Legislature's balancing in favor of those who do not receive timely payment of invoices.  See G. L. c. 149, § 29E (c)-(g).

Union, Local 718, Int'l Ass'n of Fire Fighters, AFL-CIO v. Boston, 491 Mass. 556, 562 (2023), citing Garcia v. Department of Hous. & Community Dev., 480 Mass. 736, 747 (2018); Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 642-643 (1987) (affirming "preliminary injunction ordering [plaintiff] to continue making payments to [defendant] as required by [their contracts]").  This garden-variety tool, if granted, comports with the act's intent to ensure subcontractors receive prompt payment, see G. L. c. 149, § 29E (c), without quashing a contractor's ability to marshal defenses.  See ante at   ("We emphasize that the act does not expressly [or by implication] preempt all common-law defenses to breach of contract").  Of course, a party so enjoined, which fails to pay, is subject to contempt.  United Factory Outlet, Inc. v. Jay's Stores, Inc., 361 Mass. 35, 37 (1972) (upholding civil contempt decree against defendants who failed to abide by preliminary injunction).

By contrast, the court grants Business Interiors a Pyrrhic victory.  On the one hand, it affirms summary judgment in favor of Business Interiors.  On the other hand, it remands the case for further proceedings, further delaying any payment to Business Interiors, having concluded, albeit correctly, that the Superior Court judge's entry of separate and final judgment on

the breach of contract claim was improper under Mass. R. Civ. P. 54 (b).[6]  For these reasons, I respectfully dissent in part.

---

[6] Here, of course, the claims, counterclaims, and cross claims stem from the same facts.  See Barbetti, 490 Mass. at 103 (rule 54 [b] requires claim to be "separable from and independent of the remaining claims in the case" and not "inextricably intertwined" with them [citations omitted]).